Douglas A. Latto (pro hac vice to be submitted)
Daniel D. Barks (pro hac vice to be submitted)
Jeanne M. O'Grady (pro hac vice to be submitted)
SPEISER KRAUSE P.C.
800 Westchester Avenue, Suite S-608
Rye Brook, New York 10573
Tel.:914-220-5333
Fax: 914-220-5334
Email:dal@speiserkrause.com
Email:ddb@speiserkrause.com
Email:jog@speiserkrause.com

Stuart R. Fraenkel (State Bar No. 173991)
Gretchen Nelson (State Bar No. 112566)
Carlos F. Llinás Negret (State Bar No. 284746)
NELSON & FRAENKEL LLP
601 S. Figueroa Street, Suite 2050
Los Angeles, California 90017
Tel.:213-622-6469
Fax: 213-622-6019
Email:stuart@nflawfirm.com
gnelson@nflawfirm.com
cllinas@nflawfirm.com

*Attorneys for Plaintiffs Kevin Eckelkamp and Elizabeth Eckelkamp*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| KEVIN ECKELKAMP, Individually and as Spouse of ELIZABETH ECKELKAMP, and ELIZABETH ECKELKAMP, Individually and as Spouse of KEVIN ECKELKAMP, <br><br> Plaintiffs, <br> v. <br><br> PRINCESS CRUISE LINES, LTD, doing business as PRINCESS CRUISES; VENTURE TRAVEL, LLC, doing business as TAQUAN AIR; and MOUNTAIN AIR SERVICE, LLC, doing business as MOUNTAIN AIR. <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY TRIAL DEMANDED** |

1

KEVIN ECKELKAMP and ELIZABETH ECKELKAMP, each individually and as each other's spouse (collectively referred to as the "PLAINTIFFS"), by and through their undersigned attorneys, file their Complaint against defendants PRINCESS CRUISE LINES, LTD., doing business as PRINCESS CRUISES (collectively referred to as "PCL"); VENTURE TRAVEL, LLC, doing business as TAQUAN AIR; and MOUNTAIN AIR SERVICE, LLC, doing business as MOUNTAIN AIR, and allege as follows:

## INTRODUCTION

1.     On May 13, 2019, the PLAINTIFFS were fare paying passengers on Defendant PCL's cruise ship, the Royal Princess.

2.     Prior to the cruise embarking from Vancouver, Canada on May 11, 2019 Defendant PCL, amongst other things, marketed, promoted, advertised and sold various shore excursions to the passengers of the Royal Princess, specifically including a tour known as the Misty Fjords Wilderness Cruise and Flight Tour (the "Misty Fjords Tour") which Defendant PCL sold to the PLAINTIFFS.  The Misty Fjords Tour consisted of a boat ride from the Ketchikan Harbor Seaplane Base located in Ketchikan, Alaska to the Misty Fjords National Monument, and then the return trip back to the seaplane base was by an aircraft equipped with floats that that took off from, and was intended to land in water.  All aspects of the Misty Fjords Tour, including all travel arrangements, coordination, and the selection of the operators who would conduct the boat and aircraft portions of the tour were controlled, selected, vetted, and determined by the Defendant PCL on behalf of the PLAINTIFFS.

3.     Defendant PCL derives substantial revenues from shore excursions that it markets, promotes, advertises and sells to its cruise passengers, specifically including the Misty Fjords Tour that Defendant PCL sold to the PLAINTIFFS. The Misty Fjords Tour, as well as other tours consisting of seaplane scenic flights are also used by PCL to market and sell its cruise packages, from which it also derives substantial revenues.

4.     At all times relevant herein, and as a result of the promotional and advertising materials provided by Defendant PCL, PLAINTIFFS reasonably and justifiably believed that

the Misty Fjords Tour, including the operator of the flight portion, was safe because it was selected, vetted, offered, coordinated, managed, conducted, controlled, owned, co-owned and/or operated by Defendant PCL.

5.     On May 13, 2019 PLAINTIFFS disembarked the Royal Princess at the port in Ketchikan, Alaska, for the Misty Fjords Tour that it purchased through Defendant PCL.  At all times relevant, Defendant PCL handled all arrangements for the tour, and its agents, servants, employees and/or representatives directed PLAINTIFFS from the Royal Princess to the boat for the commencement of the Misty Fjords Tour.  The boat ride was uneventful.

6.     The flight portion of the Misty Fjords Tour was to consist of an approximate 25-minute flight that was to take off and land in water to return PLAINTIFFS from the Misty Fjords National Monument to the Ketchikan Harbor Seaplane Base located at the port in Ketchikan, Alaska where it was intended that the PLAINTIFFS were to, at the direction of Defendant PCL's agents, servants, employees and/or representatives, re-embark the Royal Princess for their cruise to the next port of call.  During this flight, the aircraft, which was selected by the Defendant PCL was involved in a mid-air collision, causing the aircraft to rapidly descend more than 3,350 feet and crash into the icy waters of the George Inlet.  As a result of the mid-air collision and subsequent crash PLAINTIFFS each suffered lifelong severe, serious and permanent personal, physical, mental and economic injuries, including, but not limited to multiple orthopedic fractures requiring multiple surgeries, painful rehabilitation, mental anguish, post-traumatic stress disorder, fear of impending death, loss of each other's consortium, and suffered other serious permanent injuries, all rendering PLAINTIFFS permanently and severely injured.

## PARTIES

7.     At all times relevant, PLAINTIFFS KEVIN ECKELKAMP and ELIZABETH ECKELKAMP were and are a married couple who reside together in, and are citizens of, the state of Missouri.

8.   At all times relevant, Defendant PCL was and is a for profit corporation duly organized and existing under the laws of Bermuda, maintaining its principal place of business in the state of California.  In addition, Defendant PCL unilaterally and without negotiation issues a passage contract as part of its cruise ticket which purports to bind all passengers who travel on its cruise ships, specifically including the PLAINTIFFS (the "Passage Contract"). The Passage Contract contains non-negotiable terms, including forum selection and choice of law clauses as further detailed below.  PLAINTIFFS have also complied with all purported notice provisions contained in the Passage Contract.

9.   At all times relevant, Defendant VENTURE TRAVEL LLC, doing business as TAQUAN AIR (referred to as "TAQUAN AIR"), was and is a for profit limited liability company duly organized and existing under the laws of the state of Alaska, maintaining its principal place of business in the state of Alaska.  Upon information and belief, the members of TAQUAN AIR are also citizens of the state of Alaska.

10.   At all times relevant, Defendant TAQUAN AIR leased and operated a certain De Havilland DHC-3 "Turbine Otter" model aircraft, bearing Federal Aviation Registration Number N959PA (referred to as the "Taquan Otter Aircraft") that was involved in the mid-air collision that is the subject of this litigation.

11.   At all times relevant, Defendant MOUNTAIN AIR SERVICE, LLC ("MOUNTAIN AIR"), was and is a for profit limited liability company duly organized and existing under the laws of the state of Alaska, maintaining its principal place of business in the state of Alaska.  Upon information and belief, the members of MOUNTAIN AIR are also citizens of the state of Alaska.

12.   Defendant MOUNTAIN AIR owned and operated the other aircraft that was involved in the mid-air collision, namely, a De Havilland DHC-2 "Beaver" model aircraft, bearing Federal Aviation Registration Number N952DB (referred to as the "Mountain Air Beaver Aircraft")

///

**JURISDICTION AND VENUE**

13.   This matter arises under General Maritime Law and any other applicable supplemental law, as the claims and damages herein occurred over and on navigable waterways of the United States, during traditional maritime activity, and/or as provided in the Passage Contract.  This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, 28 U.S.C. §1331.  It is being brought pursuant to Article III, §2 of the United States Constitution, delegating jurisdiction over admiralty cases to the federal courts, and 28 U.S.C. §1333.

14.   This action is being brought in this Court, as opposed to state court as allowed by the Saving to Suitors Clause under 28 U.S.C. § 1333, due to the fact that Defendant PCL unilaterally and without negotiation includes a forum selection clause in the Passage Contract, which provides, amongst other things, that all claims involving personal injury, emotional harm, illness or death shall be litigated in and before the United States District Court for the Central District of California in Los Angeles.  Notwithstanding that suit has been filed in this forum, PLAINTIFFS reserve their right to contest the validity of this or any other clause contained in the Passage Contract.

15.   Subject Matter Jurisdiction also exists pursuant to 28 U.S.C. § 1332, diversity of citizenship, and the amount in controversy exceeds $75,000.00.

16.   In addition, Defendant PCL maintains its corporate headquarters in this State and as such, is subject to the general jurisdiction of this Court.

17.   Upon information and belief, Defendants TAQUAN AIR and/or MOUNTAIN AIR are each subject to the specific personal jurisdiction of this Court as a result of operating, conducting, engaging and/or carrying on a business venture in the state of California, and specifically within this judicial district; and/or were engaged in substantial activity within this state; and/or solicited, or actually entered into contracts in this state; all of which was and is directly related to the claims that are the subject of this litigation, namely the flight services that they each provided to the cruise ship passengers of Defendant PCL, and/or as

an agent of the Defendant PCL in connection with the flight portion of the Misty Fjords Tour which resulted in PLAINTIFFS' injuries.

18.   Section 1 of the Passage Contract between defendant PCL and PLAINTIFFS states that all disputes between these parties is governed by general maritime law, and if not, California law. This contract also states that affiliated companies, independent contractors, shore excursion providers and tour operators, are "third party beneficiaries [who] derive rights and exemptions from liability as a result of this Passage Contract." (Sec. 1).  It further provides that such third parties are considered the "Carrier" for the purposes of contractual rights, exemptions from liability, defenses and immunities.  Specifically, Section 1 of the Passage Contract states in relevant part:

> Specifically, all of Carrier's rights, exemptions from liability, defenses and immunities under this Passage Contract (including, but not limited to, those described in Sections 4, 6, 7, 12, 13, 14, and 15) will also inure to the benefit of the following persons and entities who shall be considered "Carrier" only for purposes of such rights, exemptions from liability, defenses and immunities: . . . . any affiliated or related companies thereof and their officers, crew, pilots, agents or employees, and all concessionaires, independent contractors, . . .  shore excursion providers, tour operators, . . . .

19.   Section 15 of the Passage Contract sets forth jurisdiction and venue.

(B) Forum and Jurisdiction for Legal Action:

> (i) Claims for Injury, Illness or Death: All claims or disputes involving emotional harm, bodily injury, illness to or death of any Guest whatsoever, including without limitation those arising out of or relating to this Passage Contract or Your Cruise [including off-ship excursions], shall be litigated in and before the United States District Courts for the Central District of California in Los Angeles, or as to those lawsuits over which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Los Angeles County, California, U.S.A., to the exclusion of the courts of any other country, state, city, municipality, county or locale. You consent to jurisdiction and waive any objection that may be available to any such action being brought in such courts.

20. Defendant PCL states on its website that it acts as an "agent" for its excursion operators, one of whom is defendant TAQUAN AIR.  As agent and/or joint venturer, defendant PCL had authority to bind defendant TAQUAN AIR to the Passage Contract and the forum selection clause. In addition, the acts of defendant PCL in California as agent of

defendant TAQUAN AIR constitute the acts of defendant TAQUAN AIR in California for personal jurisdiction considerations.  Defendants TAQUAN AIR and PCL are agents of each other.  Furthermore, as a result of its business relationship with Defendant PCL, Defendant TAQUAN AIR was aware of the provisions of the Passage Contract and did not object to the foregoing jurisdictional conditions of the Passage Contract.  As such, Defendant TAQUAN AIR is estopped from asserting a lack of personal jurisdiction in this Court.

19.     By its own terms and/or on the basis of estoppel, the conditions of the Passage Contract, including the forum selection clause, apply to defendant TAQUAN AIR as an excursion operator.

20.     Defendant TAQUAN AIR has also engaged in substantial and not isolated activity in California directly related to the causes of action set forth in this Complaint. Defendant TAQUAN AIR's continuous and systematic activities in California, including agreeing to California jurisdiction by way of its tour operator agreement as discussed below, also include:

a.     Contacting cruise lines in California, specifically including the defendant PCL, for the purposes of establishing long term business partnerships with cruise lines, specifically including defendant PCL, to conduct sightseeing flights in Alaska, including the flight portion of the Misty Fjords Tour;

b.     Providing scenic flights to passengers of defendant PCL in scheduled ports-of-call where said defendant's vessels' call, including in Ketchikan, Alaska, where thousands of defendant PCL's passengers are brought. The best way that defendant TAQUAN AIR can attract these customers is by contacting California-based defendant PCL and establishing a principal/agent relationship as well as other business relationships with defendant PCL to provide flight services, including the flight portion of the Misty Fjords Tour, that directly results in the creation of contractual relationships between defendant TAQUAN AIR, defendant PCL, and Princess passengers, specifically including the PLAINTIFFS, in Los Angeles, California;

c.      Partnering with major cruise operators like defendant PCL which results in lucrative business income for defendant TAQUAN AIR, as the vast majority of participants in defendant TAQUAN AIR's flight excursions come from its partnership with cruise lines, specifically including defendant PCL.  By entering into an agreement with California-based defendant PCL in California, defendant TAQUAN AIR derives and receives the benefits of the cruise line's advertising efforts originating in Los Angeles County, California and directed toward their actual and potential customers specifically including the PLAINTIFFS, and specifically with respect to flight operations including the flight portion of the Misty Fjords Tour;

d.      Before and after a passenger boards a vessel, defendant PCL offers, arranges for, recommends and markets excursions operated by defendant TAQUAN AIR, specifically including the flight portion of the Misty Fjords Tour. For instance, defendant PCL advertises and promotes the Misty Fjords Tour which ostensibly includes defendant TAQUAN AIR's flights as it is the operator of the flight portion of the Misty Fjords Tour. These websites, hosted in California, specifically target millions of North American cruise passengers. Defendant PCL allows passengers to book and pay for excursions through Princess' website, specifically including the Misty Fjords Tour, from "180 days before travel, and up to 5 days before they depart."  Through the website, passengers of the defendant PCL can purchase the tour, read about the tour, see pictures, watch a promotional video, and review all of the excursion items that defendant PCL will offer upon their arrival at the port of call. All of these promotional and booking activities originate and are consummated in Los Angeles County, California;

e.      Defendant PCL also allows passengers to book and purchase shore excursions, including the Misty Fjords Tour, which includes flight operations conducted by the defendant TAQUAN AIR, at designated PCL excursion and exploration desks on board its ships. At these desks, passengers can talk to a PCL crewmember, who is trained by PCL to answer questions and provide information about excursions, specifically

including the Misty Fjords Tour, and to help passengers purchase such a tour which includes the flight portion operated by defendant TAQUAN AIR, yet these PCL crewmembers do not disclose to passengers the name of the operator who will conduct the flight portion of the Misty Fjords Tour;

f.    The tickets for the Misty Fjord Tour are marketed, advertised, and sold through defendant PCL in Los Angeles County, California, and tickets for the flight excursions, including the Misty Fjords Tour purchased by PLAINTIFFS were issued from defendant PCL in California;

g.    Defendant PCL maintains a department and/or a specific group of employees at its headquarters in California devoted to reviewing, investigating, vetting, approving, creating, developing, promoting, marketing, coordinating, explaining, overseeing, supervising, auditing, tracking and monitoring the excursions sold to its passengers, and its ports of call, specifically including the Misty Fjords Tour which includes the flight portion operated by the defendant TAQUAN AIR. Defendant PCL solely issues the tickets for such excursions, including PLAINTIFFS' tickets on the subject excursion which included the flight portion operated by defendant TAQUAN AIR;

h.    After a passenger books an excursion on the defendant PCL's website or aboard one of its ships, the defendant TAQUAN AIR conducts the flight portion of the Misty Fjords Tour and then forwards an invoice to defendant PCL's accounts payable department in California. These invoices are then processed and approved by the accounts payable department in California, which then transfers funds to defendant TAQUAN AIR based on banking details provided by defendant TAQUAN AIR to defendant PCL;

i.    Upon information and belief, in order to maintain existing (and obtain new) business, defendant TAQUAN AIR submits annual bids and/or renewals for contracts to defendant PCL's headquarters in California. Through these bids and/or renewals, defendant TAQUAN AIR offers and permits defendant PCL the right to sell to PCL's

customers, via PCL's California website, tickets on the excursions which includes flights operated by the defendant TAQUAN AIR in Alaska. The bids include forms (created by defendant PCL in California) which are generally referred to as tour proposal templates. In the template, defendant TAQUAN AIR provides defendant PCL information regarding each excursion flight including tour operator information, tour pricing, timing, accessibility, safety policies, licenses, permits and prior accidents and injuries that have occurred;

j.      Defendant TAQUAN AIR submits these bids and the attached tour templates every year to defendant PCL in California in order to renew existing agreements and to sell its flight excursions through defendant PCL in Los Angeles County, California. Defendant PCL then processes defendant TAQUAN AIR's bid and determines (at its California offices), whether or not to renew and/or expand its existing agreement with defendant TAQUAN AIR. By submitting bids, renewals, and tour proposal templates to California-based cruise lines every year, defendant TAQUAN AIR purposefully and systematically contacted cruise lines in California to maintain (and increase) its revenues and to sell, in Los Angeles County, California, tickets on its excursion flights;

k.      Upon information and belief, at all times material, defendant TAQUAN AIR has entered into one or more written contracts with defendant PCL entitled "Tour Operator Manual and Agreement" and/or has entered into a business enterprise and/or course of dealing with defendant PCL (collectively referred to herein as "tour operator agreement") to co-venture the marketing, selling, and provision of recreational shore excursions, including flights such as those purchased by PLAINTIFFS, for the benefit of PCL's cruise passengers. The tour operator agreement provides that its purpose is to enhance "passengers' experiences" and ensure "passengers' safety". PLAINTIFFS are third-party beneficiaries of the operator/excursion provider agreements between defendants PCL and TAQUAN AIR. PLAINTIFFS do not have a copy of this agreement(s), and therefore cannot fully plead facts from the same. Counsel for

defendants PCL and TAQUAN AIR agreed to produce the tour operator agreement before this Complaint was filed, but to date they have not done so;

l.      Upon information and belief, the tour operator agreement further contains California forum and choice of law provisions, which governs claims arising between defendants PCL and TAQUAN AIR, and between defendants PCL and/or TAQUAN AIR and passengers/excursion users, such as PLAINTIFFS. Though PLAINTIFFS are without a copy of this agreement, upon information and belief at least part of the California forum clause in PCL's written agreements with other tour operators, states:

Tour Operators **agree to submit to personal jurisdiction in Los Angeles County, California** by providing shore excursions or related services to Princess Cruise Lines, Ltd. and Carnival plc passengers. Tour Operators **waive any and all objections** they may have to jurisdiction or venue in Los Angeles County, California. Liability coverage must respond to claims brought in the United States based on an incident arising from one of the Tour Operator's programs or related services (emphasis added).

m.      Upon information and belief, in the tour operator agreement(s), defendant TAQUAN AIR agreed to a "California" forum selection clause providing that lawsuits with defendant PCL's customers shall be brought in this District. In addition, upon information and belief, defendant TAQUAN AIR agreed to indemnify defendant PCL for some or all of the claims made in this Complaint;

n.      Upon information and belief, the tour operator agreement was drafted by defendant PCL's legal department in California. Upon information and belief, the contract became fully executed, after defendant PCL signed it in California. PLAINTIFFS are third-party beneficiaries of all such agreements between defendants PCL and TAQUAN AIR;

o.      Through the Passage Contract, and defendant TAQUAN AIR's acceptance of it and/or express or implied incorporation of it in agreements with defendant PCL, defendant TAQUAN AIR agreed to the forum selection clauses' exclusive jurisdiction of the courts in California for all disputes and matters between defendant PCL's

passengers and defendant TAQUAN AIR, including the claims brought by the PLAINTIFFS herein.

p. In addition, through the tour operator agreement, defendant TAQUAN AIR agreed to the exclusive jurisdiction of the courts in California for all disputes and matters related to excursions involving defendant PCL's passengers, including the claims of the PLAINTIFFS arising from the May 13, 2019 mid-air collision during the Misty Fjords Tour.

21. By agreeing to the jurisdiction of the court in California, defendant TAQUAN AIR purposefully availed itself in advance, and intended to submit itself to the jurisdiction of this court and/or defendant TAQUAN AIR is subject to the jurisdiction of this court by engaging in substantial and purposeful business arrangements in this State which are directly related to the claims in this litigation.

22. Upon information and belief, and at all times relevant, Defendant MOUNTAIN AIR engaged in substantial and not isolated activity in California which is directly related to the claims in this litigation. Defendant MOUNTAIN AIR's continuous and systematic activities within California include contracting with, and/or soliciting to contract with, and in maintaining an ongoing business relationship and/or partnership with Defendant PCL in California which enabled Defendant MOUNTAIN AIR to provide flight services which resulted in PLAINTIFFS' injuries.

23. Upon information and belief, by entering into the contractual relationship with the Defendant PCL, and/or soliciting to enter into said arrangement, the Defendant MOUNTAIN AIR derived substantial revenues from PCL's passengers, and benefitted from this relationship in California all as a result of Defendant MOUNTAIN AIR's solicitation of business in this State regarding the performance of flight services which are directly related to the claims set forth herein.

24. Upon information and belief, the contractual arrangement and/or solicitation of the contractual arrangement, between Defendants MOUNTAIN AIR and PCL was drafted

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

and/or occurred in the state of California, and the contract could only become effective after the Defendant PCL executed the contract in California.

25.    In addition, Defendant MOUNTAIN AIR conducted substantial business in this state which is directly related to the claims in this litigation, namely, that at least one passenger on the Mountain Air Beaver Aircraft at the time of the mid-air collision was a citizen and resident of the state of California, who, upon information and belief, purchased his ticket while in the state of California, and as such, Defendant MOUNTAIN AIR was engaged in substantial activity within this state, advertised, solicited business and/or entered into contracts in this state.  As a result, Defendant MOUNTAIN AIR specifically and purposefully solicited business, derived substantial revenues, from and within the state of California that are directly related to the claims asserted in this litigation, namely the flight services that it offered that led to the mid-air collision and PLAINTIFFS' injuries and availed itself of the benefits and privileges of doing business in the state of California.

26.    Based upon the foregoing, Defendant MOUNTAIN AIR is subject to the personal jurisdiction of this Court.

27.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant PCL is a corporation with its principal place of business in Los Angeles, California.   Additionally, Defendant PCL unilaterally and without negotiation inserts a forum selection clause into the Passage Contract purporting to require that litigation be filed in this Court.  Upon information and belief, Defendants TAQUAN AIR and/or MOUNTAIN AIR have conducted business in this district, including either entering into agreements with the Defendant PCL or soliciting to enter into such agreements, and/or with Defendant PCL's passengers located in this district to provide flight services in connection with tour excursions either on their own and/or those that Defendant PCL marketed, promoted, advertised and sold to its cruise passengers, and/or solicited business within this judicial district.

///

///

**GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

28.     PLAINTIFFS repeat, reiterate and re-allege all allegations contained in paragraphs 1 through 27 as though fully set forth at length herein.

29.     Defendant PCL engaged in the for-profit business of providing to the public generally, and the PLAINTIFFS in particular, vacation cruises aboard its vessels, including the Royal Princess. Defendant PCL is a common carrier and PLAINTIFFS' direct claims of negligence herein fall within the prohibitions against disclaimers as contained in 46 U.S.C. § 30509. That statue prohibits common carriers from limiting their liability for "personal injury or death caused by negligence or fault of the owner [of the passenger vessel] or the owner's employees or agents." Id., § 30509(a)(1)(A).

30.     Seaplane scenic flights to/from the Misty Fjords National Monument is the top cruise ship excursion in Alaska, and is the highlight of many passenger trips. This excursion is used by Defendant PCL to sell Alaskan cruise trips to its customers. Therefore, it is financially critical that Defendant PCL be able to offer this excursion to sell its Alaskan cruises.

31.     In early 2016 before the Alaskan cruise ship season, Defendant TAQUAN AIR and Promech Air ("Promech") were the sole aviation providers for Defendant PCL (and other Carnival cruise operators) of the scenic seaplane flights to/from the Misty Fjords National Monument, each performing approximately one-half of the flights for Defendant PCL.  As a result of numerous prior accidents (set forth below), including the June 24, 2015 fatal accident that killed 9 people on a Promech Otter aircraft, Promech was unable to continue its operations due to safety related issues.  As a result, defendant PCL was left with no operator to operate approximately half of its planned Misty Fjords National Monument scenic seaplane flights for the 2016 season, possibly losing substantial revenue on this excursion, and reduced passengers overall due to the unavailability of this excursion. In April 2016 defendant TAQUAN AIR purchased Promech in its entirety, including hiring Promech's employees, and the purchase allowed defendant TAQUAN AIR to immediately

operate a fleet of Turbine Otter aircraft as a "turnkey" operation.  Notwithstanding the significant safety issues at Promech, Defendant PCL failed to perform an adequate safety review, or any safety review, of Defendant TAQUAN AIR after its purchase of Promech, including the manner in which defendant TAQUAN AIR incorporated Promech assets into its flight operations.

32.     Starting in 2016, Defendant TAQUAN AIR was the sole aviation provider for Defendant PCL (and other Carnival cruises) of the scenic seaplane flights to/from the Misty Fjords National Monument. After the July 10, 2018 Taquan Air Otter accident, caused by pilot error and company mismanagement, Defendant PCL was put on further notice that Defendant TAQUAN AIR was incompetent and unfit to safely fly Defendant PCL's passengers. However, Defendant PCL had no other operator in Ketchikan to perform these flights. Therefore, because of the financial significance of offering this excursion as part of its Alaskan cruises, Defendant PCL chose to continue allowing Defendant TAQUAN AIR to operate flights when it knew, and/or should have known, that Defendant TAQUAN AIR was unfit and not safe, placing Defendant PCL passengers, including PLAINTIFFS in harm's way, subjecting them to an unreasonable risk of harm, and without warning.

33.     As part of the cruise that it offered to the PLAINTIFFS, Defendant PCL, through written literature as well as through its California-based privately maintained website specifically directed at the PLAINTIFFS, actively and purposefully marketed, promoted, advertised and sold various shore excursions to the passengers of the Royal Princess, specifically including the Misty Fjords Tour that was sold to the PLAINTIFFS.

34.     All promotional materials regarding tour excursions that Defendant PCL offered for sale, specifically including the Misty Fjords Tour, created the impression that the tour was a "PCL tour" by, amongst other things, prominently displaying Defendant PCL's logo and stating in sum and substance that these were "unique" and "exclusive" PCL tour excursions; referred to the tour excursions as "our" tour excursions for which "exceptional service" is provided; as well as other representations and depictions that demonstrated and/or

created the impression that Defendant PCL promoted, selected, vetted, offered, coordinated, managed, conducted, operated, controlled, owned and/or co-owned the tour excursions, specifically including the Misty Fjords Tour.

35.     The promotional materials written, published and/or promulgated by the Defendant PCL also recommended to PCL's passengers, specifically including the PLAINTIFFS, that they purchase their tour excursions exclusively through Defendant PCL for a variety of reasons, including, but not limited to, "a best price guarantee"; "small groups"; "guaranteed return to ship"; and "a promise that the ship will wait"; all in a further effort to recommend and "push" these tour excursions on Defendant PCL's passengers, as well as creating the impression, upon which PLAINTIFFS specifically relied, that the tour excursions offered for sale by Defendant PCL, including the Misty Fjords Tour, were selected, vetted, offered, coordinated, managed, conducted, operated, controlled, owned and/or co-owned by the Defendant PCL; and/or that Defendant PCL properly and carefully screened and audited the entities that provided the actual tour; and/or that Defendant PCL co-ventured, co-owned and/or worked in conjunction with the tour operators in a joint venture or common enterprise, and/or in partnership; as well as that the tour excursions, including the Misty Fjords Tour, were in fact safe for Defendant PCL's passengers, specifically including the PLAINTIFFS; all of which representations PLAINTIFFS relied upon.

36.     Furthermore, upon initially embarking the Royal Princess prior to the start of the cruise, Defendant PCL's agents, servants, employees and/or representatives directed passengers, specifically including the PLAINTIFFS, to the "tour excursions desk" where Defendant PCL further marketed, promoted, advertised and sold various tour excursions, specifically including the Misty Fjords Tour, again creating the impression that the tour excursions were selected, vetted, offered, coordinated, managed, conducted, controlled, owned, co-owned and/or operated by the Defendant PCL, all for the benefit of PCL's passengers, including, but not limited to, for their safety and security.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

37.     At no time prior to the Misty Fjords Tour did Defendant PCL disclose the name of the operator of the flight portion of the excursion, nor did Defendant PCL provide a means for PLAINTIFFS to identify the operator, furthering PLAINTIFFS' justifiable expectation and belief that the Misty Fjords Tour was selected, vetted, offered, coordinated, managed, conducted, controlled, owned, co-owned and/or operated by the Defendant PCL.

38.     At all times relevant, Defendant PCL made all arrangements with respect to the Misty Fjords Tour on behalf of the PLAINTIFFS; all contacts regarding the Misty Fjords Tour was with Defendant PCL; PLAINTIFFS were charged by, invoiced and paid Defendant PCL for the Misty Fjords Tour; and PLAINTIFFS received their receipt for their purchase of the tour exclusively from Defendant PCL, all without Defendant PCL ever identifying or disclosing the operator of the flight portion of the Misty Fjords Tour.

39.     As a result of the material representations by, and obligations of, the Defendant PCL, including, but not limited to, with respect Defendant PCL's paper and on-line marketing, promotion, advertising and sale of the Misty Fjords Tour, which were specifically and justifiably relied upon by the PLAINTIFFS, the PLAINTIFFS purchased the Misty Fjords Tour with the expectation that the tour was selected, vetted, offered, coordinated, managed, conducted, controlled, owned, co-owned and/or operated by the Defendant PCL, all for the benefit of Defendant PCL's passengers, including, but not limited to, for their safety and security.

40.     Furthermore, at all times relevant, Defendants TAQUAN AIR and/or MOUNTAIN AIR were the agents and/or apparent agents of the Defendant PCL with respect to the Misty Fjords Tour such that Defendant PCL is estopped from denying that Defendants TAQUAN AIR and/or MOUNTAIN AIR were its agents.

41.     At all material times herein, Defendant TAQUAN AIR was the agent, apparent agent, joint venturer, servant, representative, and/or employee of Defendant PCL and at all times acted within the course and scope of that employment, agency, apparent agency, joint venture or service by virtue of the following, among other facts:

a.      Defendant PCL made all arrangements for the subject excursion without disclosing to PLAINTIFFS that the subject excursion flight was to be performed by Defendant TAQUAN AIR;

b.      Defendant PCL marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without disclosing to PLAINTIFFS that the flight portion of the subject excursion was operated by Defendant TAQUAN AIR;

c.      Defendant PCL maintained a department and/or specific group of employees in its headquarters in California devoted to creating, developing, promoting, marketing, coordinating, controlling, explaining, overseeing, supervising, auditing, tracking and monitoring its ports of call and the excursions sold to its passengers, including the subject scenic flight excursion;

d.      Defendant PCL maintained an excursion desk on its ship, staffed by its employees, where Defendant PCL marketed, offered and sold excursions, provided expert advice and information, answered questions, handled and resolved complaints and refunds on behalf of its subsidiary, employees, servants, agents, representative, and/or tour operator partners, including Defendant TAQUAN AIR, for which Defendant PCL incurred certain expenses and costs and reaped significant profit;

e.      Defendant PCL recommended its passengers to not participate in excursions, tours and/or activities that are not PCL excursions sold through Defendant PCL;

f.      The PLAINTIFFS' exclusive contract and contact concerning the excursion was with Defendant PCL;

g.      Defendant PCL determined the amount of money charged for the subject excursion;

h.      The fee for the Misty Fjord Tour, including the scenic flight portion, was charged to PLAINTIFFS, and collected from the PLAINTIFFS, exclusively by Defendant PCL, and Defendant PCL handled all the funds paid by PLAINTIFFS;

1         i.     PLAINTIFFS received a receipt from Defendant PCL for the purchase of the

2    subject excursion, including tickets;

3         j.     Defendant PCL determined the time, length, and scheduling of each

4    excursion;

5         k.     Defendant PCL controlled the operation of the excursion by promulgating

6    various rules and regulations governing the conduct of the excursion, the equipment to

7    be utilized and the personnel allowed to conduct the excursion, which it required its

8    subsidiaries, employees, servants, agents, representative, and/or tour operator partners,

9    including Defendant TAQUAN AIR, to follow as part of its agreement with Defendant

10   PCL;

11        l.     Defendant PCL controlled and/or maintained the right of control over the

12   excursion by supervising and monitoring its performance and retaining the right to

13   require its subsidiaries, employees, servants, agents, representative, and/or tour operator

14   partner Defendant TAQUAN AIR, to modify, alter or change the manner in which each

15   excursion was conducted, the equipment utilized and/or the personnel conducting such

16   excursion;

17        m.     Defendant PCL controlled the operation of the excursion by expressly

18   reserving the right to determine when each excursion was safe to operate under the

19   conditions existing at the time, including the right to modify, terminate or abort each

20   excursion at any time when it was necessary to do so for the safety of its passengers, or

21   for other reasons determined by the Defendant PCL; and

22        n.     Defendant PCL represented to its passengers, including PLAINTIFFS, that

23   the excursions which it sold to them were safe, operated by reliable personnel using safe

24   equipment, and operated subject to the safety requirements established by Defendant

25   PCL.

26        42.     At all times material, Defendant TAQUAN AIR was an agent,

27   ostensible/apparent agent, employee, joint venture, and/or representative of Defendant PCL.

28

1   Any representations to the public by defendant PCL to the contrary do not control the legal

2   status of the parties.

3        43.    At all times material hereto, Defendant PCL was responsible for, and liable

4   for, the actions of Defendant TAQUAN AIR with respect to the subject excursion. In the

5   alternative, at all times material hereto, a partnership and/or joint venture existed between

6   Defendant TAQUAN AIR and Defendant PCL, whereby Defendant PCL and Defendant

7   TAQUAN AIR are jointly and severally responsible for the negligence of each other as

8   partners of the partnership and/or joint venture:

9        a.    Defendant PCL and Defendant TAQUAN AIR entered into an agreement

10   whereby Defendant PCL made all arrangements for the PLAINTIFFS, on behalf of its

11   partnership and/or joint venture with Defendant TAQUAN AIR, for PLAINTIFFS to

12   participate in the Misty Fjords Tour;

13       b.    Defendant PCL advertised and marketed the excursion on its website, in its

14   literature and aboard its vessels, on behalf of, and in furtherance of, its relationship with

15   Defendant TAQUAN AIR, for which Defendant PCL incurred certain expenses and

16   costs;

17       c.    Defendant PCL maintained, on behalf of its relationship with Defendant

18   TAQUAN AIR, a department and/or a specific group of employees in its headquarters

19   in California devoted to creating, developing, promoting, marketing, coordinating,

20   explaining, overseeing, supervising, auditing, tracking and monitoring its ports of call

21   and the excursions sold to its passengers, including the excursion on which

22   PLAINTIFFS were injured;

23       d.    Defendant PCL maintained an excursion desk on its ships, including the Royal

24   Princess, staffed by its employees, from which it marketed, offered and sold excursions,

25   provided expert advice and information, answered questions, handled and resolved

26   complaints and refunds, on behalf of its subsidiaries, employees, servants, agents,

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

representative, and/or tour operator partners, including Defendant TAQUAN AIR for which Defendant PCL incurred certain expenses and costs;

e.   Defendant TAQUAN AIR provided the DHC-3 aircraft N959PA and pilot for the Misty Fjord Tour;

f.   Defendant PCL paid Defendant TAQUAN AIR a portion of the sales of tickets for scenic flight excursions, after excursion tickets were sold, specifically including a portion of the revenue received from the PLAINTIFFS; and

g.   Defendant PCL shared profits and losses with Defendant TAQUAN AIR for the scenic flight excursions—including the subject excursion, which were divided among them according to the agreements entered into between Defendants PCL and TAQUAN AIR.

44.   In addition, Defendant PCL had an obligation to ensure the safety of its passengers on shore excursions, including the Misty Fjords Tour, by properly selecting, vetting, screening, auditing and/or retaining the entity that was to provide services during shore excursions, specifically including the flight portion of the Misty Fjords Tour, especially with respect to flight operations to ensure that such services were safe and appropriate.

45.   Defendant PCL advertised and promoted to the PLAINTIFFS that it regularly monitored the business activities of its excursion operators, such as Defendant TAQUAN AIR, and investigated the operators for safety.  Defendant PCL was responsible for all details regarding the flight portion of the Misty Fjords Tour, and that it (Defendant PCL) was offering the tour excursion.

46.   On its website, Defendant PCL represented: We selected only the most reputable companies available to provide your excursions. The companies providing your excursions are selected by Princess based on their excellent reputation for service and safety.

47.   At all times relevant, Defendant PCL selected Defendant TAQUAN AIR to conduct the flight portion of the Misty Fjords Tour, and expressly and/or impliedly

1    represented the safety of these flights to its cruise ship passengers, including PLAINTIFFS,

2    and PLAINTIFFS relied on, to their detriment, Defendant PCL's marketing, promotion,

3    advertising, sale, vetting, review, investigation, endorsement, approval, and/or selection of

4    Defendant TAQUAN AIR to conduct the flight portion of the tour.

5        48.    Defendant PCL is part of the global cruise family of companies owned and/or

6    operated by Carnival Corporation & PLC, which also includes: Carnival Cruise Line,

7    Holland America Line, Princess Cruises, Seabourn, P&O Cruises UK, Cunard, AIDA

8    Cruises, Costa Cruises, P&O Cruises (Australia), Fathom, and HAP (Alaska/Yukon). As a

9    result, information and notice to Carnival Corporation & PLC and these other companies,

10   constitutes notice to Princess with regard to accidents and safety involving Alaskan cruise

11   operations and excursions, including Ketchikan port flight excursions to and from the Misty

12   Fjords National Monument.

13       49.    Notwithstanding Defendant PCL's obligations as set forth herein, Defendant

14   PCL, knew, or should have known, prior to May 13, 2019 the significant unsafe operating

15   history of the Defendant TAQUAN AIR, including but not limited to, the fact that Defendant

16   TAQUAN AIR (and/or its acquired company) had been involved in at least 13 separate

17   aircraft accidents since 1994, which included 5 fatal accidents that resulted in the deaths of

18   17 people. These accidents also caused 24 serious injuries. Most of the accidents occurred

19   near Ketchikan during cruise ship passenger scenic flight operations, and nearly all of the

20   accidents involved pilot error and/or safety lapses at defendant TAQUAN AIR, in the same

21   or similar type of aircraft that were involved in the subject mid-air collision as set forth

22   below.

23       50.    Before May 13, 2019, defendant PCL knew or should have known of the

24   aircraft accident history involving Defendant TAQUAN AIR, including but not limited the

25   following:

26         a.    Overall Accident History. Defendant TAQUAN AIR had been involved in at

27   least 13 aircraft accidents since 1994, 5 of which resulted in 17 fatalities. These accidents

28

also caused 24 serious injuries. Most of the accidents occurred near Ketchikan during cruise ship passenger scenic flight operations, and nearly all of the accidents involved pilot error and/or safety lapses at Defendant TAQUAN AIR, in the same type of aircraft that were involved in the subject accident.

   b.   July 10, 2018 Accident. A Taquan Air DHC-3 Otter crashed into a mountain in bad weather en route to Ketchikan. There were 11 persons on board, and 6 were seriously injured. The accident was caused by pilot error, company mismanagement, and failure to follow safety procedures. As a result of this accident, and due to safety concerns with defendant TAQUAN AIR, Defendant PCL suspended its TAQUAN AIR flightseeing tours, but the suspension was short-lived, and TAQUAN AIR flights on behalf of Defendant PCL's passenger resumed.

   c.   April 11, 2016 Taquan buys Promech. Defendant TAQUAN AIR purchased its Ketchikan competitor, Promech, and merged Promech into its operations. This purchase included Promech's aircraft, operations, facilities, FAA certificates, contracts, and employees. The purchase nearly doubled Defendant TAQUAN AIR's fleet size to 16 aircraft and added the De Havilland Turbine Otter Aircraft fleet to defendant TAQUAN AIR's operations, including the accident aircraft N959PA which was involved in the mid-air collision.  Prior to this purchase, defendant TAQUAN AIR did not operate any Turbine Otter Aircraft.  Also included in the purchase was Promech's Part 135 operating certificate covering Promech's (now TAQUAN AIR's) Otter aircraft, which also included Otter pilot training, Otter aircraft operating checklists, and an Otter approved maintenance program. In addition, all employees at Promech were offered an equivalent or similar job at TAQUAN AIR, and nearly all of Promech's employees accepted this offer.  Defendant TAQUAN AIR also took over Promech's contracts with the cruise ship industry, including contracts with defendant PCL, for Misty Fjords Flightseeing and the flight portion of the Misty Fjords Tour. Defendant PCL was aware of the acquisition of Promech by Defendant TAQUAN AIR (including its operation and

employees), was aware of the operating and accident history of both Defendant TAQUAN AIR and Promech in 2016 and before, and continued to contract with Defendant TAQUAN AIR to fly Defendant PCL's cruise ship passengers, despite this accident history, and without further review or investigation.

d.      June 25, 2015 Accident. A Promech DHC-3 Otter collided with mountainous terrain 24 miles east of Ketchikan.  All nine persons died. The flight was a scenic flight for cruise ship passengers. The aircraft was en route to Ketchikan from Rudyerd Bay, 44 miles to the east. The accident was caused by pilot error and a company culture which tacitly endorsed flying in hazardous weather. The company also failed to manage risks and did not have a formal safety program.

e.      July 24, 2013 Accident. A Promech DHC-2 Beaver sustained an in-flight engine failure which caused the pilot to crash into trees. Three persons were injured.

f.      2012 Accident. A Taquan Air DHC-2 Beaver tipped on its side during a water taxi before takeoff. The cause of the accident was pilot error: the pilot's failure to maintain directional control during a steep turn on floats.

g.      July 24, 2007 Accident. A Taquan Air DHC-2 Beaver was on an air tour flight from Ketchikan to Misty Fjords National Monument when the pilot flew into a mountain in bad visibility. This accident was caused by pilot error. All five persons on board were killed.

h.      July 28, 2005 Accident. A Promech DHC-3 Otter was conducting a local sightseeing flight when a fire broke out which required an emergency landing five miles southeast of Ketchikan. The fire was the result of a fuel line leak caused by an electrical arc. Also contributing to the accident was an inadequate annual inspection by company maintenance personnel. One person was seriously injured.

i.      August 19, 2002 Accident – Mid-Air Collision. Promech was operating two seaplanes, a DHC-3 Otter and a DHC-2 Beaver.  Both departed the Ketchikan seaplane base on cruise ship passenger scenic flights, and both were loaded with passengers.

While en route to Misty Fjords National Monument, the two aircraft had a mid-air collision. Both aircraft were damaged but made emergency landings. The cause of the accident was pilot error, i.e. the pilot's failure to maintain an adequate visual outlook during cruise climb, which resulted in a midair collision between the two airplanes. This mid-air collision involved the same type of aircraft that were involved in the May 13, 2019 mid-air collision, namely, a DHC-3 Otter and DHC-2 Beaver aircraft.

j.      June 19, 2002 Accident. One Promech seaplane hit another Promech seaplane while on the water at the Ketchikan dock. The accident was caused by a dockhand prematurely letting go of a rope, and the operator's failure to provide adequate safe zones for the airplanes.

k.      August 5, 1998 Accident. A Taquan Air Cessna 185 seaplane had an engine failure in flight due to fuel mismanagement by the pilot, which caused the aircraft to crash into terrain. The flightseeing flight had departed Rudyerd Bay and was en route to Ketchikan. One passenger died, and the pilot and other passenger received serious injuries. This accident was caused by pilot error.

l.      September 29, 1997 Accident. A Promech DHC-2 Beaver seaplane stalled during takeoff from Ketchikan and crashed into the water. The pilot, who was the only person on board, died. The accident was caused by pilot error: the pilot's excessive climb and turning maneuver at low altitude, the pilot's inadvertent stall, and the intentional operation of the airplane with the required stall warning system was disabled.

m.      December 12, 1996 Accident. A Taquan Air DHC-2 Beaver on floats encountered gusty wind conditions and crashed on water 18 miles southwest of Ketchikan. The injured passenger escaped the sinking aircraft, but the pilot was unable to escape and died. The cause of the accident was pilot error: inadequate compensation for wind conditions and failure to maintain adequate airspeed leading to the stall.

n.      January 2, 1995 Accident. A Taquan Air Cessna 208 on floats struck a partially submerged log during a high-speed water taxi operation. The cause of the

accident was pilot error in that he selected an unsuitable landing area. There were no injuries to the eight persons on board.

o.     June 8, 1994 Accident. A Taquan Air Cessna 185 seaplane dragged a wing in the water during landing. There were no injuries, but the aircraft was substantially damaged.  The cause of the accident was pilot error involving the pilot's inadequate compensation for wind.

p.     May 20, 2019 Accident. A Taquan Air DHC-2 seaplane crashed during a water landing at Metlakatla, Alaska killing the pilot and passenger. Although this crash is still under investigation preliminary reports indicated that the cause of the crash was pilot error and that the pilot only had 5 hours total time flying seaplanes. While this crash occurred one week after the subject accident, it is further proof of defendant TAQUAN AIR's continued unsafe operation and the deficient safety culture that existed at the time of the subject mid-air collision.

51.   Defendant PCL was either aware of all of these accidents, and/or should have been aware of them because they are matters of public record, and Defendant PCL had a duty to vet, screen, review, investigate, endorse and approve both Defendant TAQUAN AIR and Promech to fly Defendant PCL scenic flight excursions. This accident history reflects a dangerous company culture lacking formal safety programs.

52.   As a result of the significant accident history at Defendant TAQUAN AIR (individually and/or through the company it acquired), including a prior mid-air collision and multiple crashes caused by pilot error, Defendant PCL knew, or should have known, that Defendant TAQUAN AIR was incapable, incompetent, and unfit, to provide the Defendant PCL's passengers, specifically including the PLAINTIFFS, with the highest level of safety and that given this significant deficient safety record, the continued use of Defendant TAQUAN AIR to conduct the flight portion of the Misty Fjords Tour by the Defendant PCL was "an accident waiting to happen" and thus, Defendant PCL should not have selected/and or retained Defendant TAQUAN AIR to conduct the flight portion of the Misty Fjords Tour.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

53.   Because of its safety record and accident history, Defendant TAQUAN AIR should not have been an approved excursion flight operator of Defendant PCL, and Defendant PCL should not have held out the Misty Fjords flights to its passengers and public as being safe and approved by Defendant PCL including for the subject excursion on May 13, 2019. Defendant TAQUAN AIR's accident history established that it was not a safe operator, that pilot error was the common cause of nearly all of the previous accidents, including a nearly identical mid-air accident in 2002 that involved two Promech aircraft.

54.   Defendant PCL failed to disclose these accidents, the accident history of Defendant TAQUAN AIR, and the risks involved to its cruise ship passengers, specifically including the PLAINTIFFS. Had this accident history been disclosed and PLAINTIFFS warned of the danger of flying with Defendant TAQUAN AIR, PLAINTIFFS would not have taken the May 13, 2019 flight.

55.   In addition and at all times relevant, and specifically on behalf of the PLAINTIFFS, Defendant PCL contracted with, and/or chartered with, Defendant TAQUAN AIR to provide the flight service portion associated with the Misty Fjords Tour, and as such, Defendant PCL acted as an air charter broker and/or indirect air carrier as those terms are defined by the Federal Aviation Regulations, including 14 CFR part 295. Defendant PCL had a statutory duty to disclose the identity of TAQUAN AIR to PLAINTIFFS before or at the time that they purchased their tickets for the excursion, which was breached, thereby denying PLAINTIFFS the opportunity to know that TAQUAN AIR was the operator and denied PLAINTIFFS the opportunity to discover TAQUAN AIR'S deficient safety record and accident history.

56.   PLAINTIFFS relied on Princess to screen, vet, investigate, review, and approve its excursion operators, including defendant TAQUAN AIR.  On its website, Princess represented:

> We selected only the most reputable companies available to provide your excursions. The companies providing your excursions are selected by Princess based on their excellent reputation for service and safety.
> https://www.princess.com/learn/faq_answer/pre_cruise/excursions.jsp

57.     On and prior to May 13, 2019, Defendant TAQUAN AIR was an airline certificated under 14 C.F.R. Part 135 of the Federal Aviation Regulations and was, and is, a commercial air carrier engaged in the business of carrying passengers for hire.

58.     On and prior to May 13, 2019, Defendant TAQUAN AIR entered into the Tour Operating Contract with Defendant PCL whereby it was to operate the Taquan Otter Aircraft as an on-demand sightseeing flight pursuant to said contract, and on behalf of Defendant PCL.

59.     On May 13, 2019, and pursuant to the Tour Operating Contract, the Taquan Otter Aircraft was operated as a charter flight intending to carry only Defendant PCL's cruise passengers, specifically including the PLAINTIFFS, from the Misty Fjords National Monument to the Ketchikan Harbor Seaplane Base located at the port in Ketchikan, Alaska.

60.     As a Part 135 air carrier, Defendant TAQUAN AIR, either on its own and/or in conjunction with Defendant PCL, provided training, instruction, guidance and/or supervision to the pilot of the Taquan Otter Aircraft, who at all times relevant was acting within the course and scope of his employment, and either on its own and/or in conjunction with Defendant PCL, wrote and/or approved instructions and warnings for the subject aircraft and its component parts and systems, including, but not limited to, its aircraft flight manual, aircraft operating manual, pilot operating handbook, training manuals, curriculum and/or procedures, including, but not limited to, training, procedures and operations regarding flight in congested airspace, especially during the busy tourist season, including, but not limited to, specific training to avoid a mid-air collision.

61.     On and prior to May 13, 2019, Defendant MOUNTAIN AIR was an airline certificated under 14 C.F.R. Part 135 of the Federal Aviation Regulations and was, and is, a commercial air carrier engaged in the business of carrying passengers for hire.

62.     On May 13, 2019, the Mountain Air Beaver Aircraft was operated as a charter flight by the defendant MOUNTAIN AIR intending to carry passengers of Defendant PCL

1    from the Misty Fjords National Monument to the Ketchikan Harbor Seaplane Base located

2    at the port in Ketchikan, Alaska.

3         63.    As a Part 135 air carrier, Defendant MOUNTAIN AIR provided training,

4    instruction, guidance and/or supervision to the pilot of the Mountain Air Beaver Aircraft who

5    at all times relevant was acting within the course and scope of his employment, and wrote

6    and/or approved instructions and warnings for the subject aircraft and its component parts

7    and systems, including, but not limited to, its aircraft flight manual, aircraft operating

8    manual, pilot operating handbook, training manuals, curriculum and/or procedures,

9    including, but not limited to, training, procedures and operations regarding flight in

10   congested airspace, especially during the busy tourist season, including, but not limited to,

11   specific training to avoid a mid-air collision.

12        64.    On May 13, 2019, PLAINTIFFS and others disembarked the Royal Princess

13   and were directed by Defendant PCL's agents, servants, employees, and/or representatives

14   to the boat that was going to ferry them to Misty Fjords National Monument as part of the

15   Misty Fjords Tour.  The boat ride was uneventful.

16        65.    Upon conclusion of the boat ride, PLAINTIFFS and others boarded the

17   Taquan Otter Aircraft for the flight portion of the Misty Fjords Tour.  It was intended that

18   the aircraft would embark from water on an approximately 25-minute sight-seeing flight

19   from the Misty Fjords National Monument to the Ketchikan Harbor Seaplane Base located

20   at the port in Ketchikan, Alaska, where the aircraft was to land on water, and the

21   PLAINTIFFS would then re-embark the Royal Princess to continue their vacation cruise.

22        66.    The Taquan Otter Aircraft N959PA had been purchased by Defendant

23   TAQUAN AIR from Promech in 2016. On and prior to May 13, 2019, the aircraft's operating

24   checklist was not a TAQUAN AIR checklist, but was an outdated Promech checklist, entitled

25   "Promech Air Normal Checklist". Though traffic collision avoidance equipment,

26   specifically ADS-B equipment use was required on the aircraft, the checklist did not contain

27   any ADS-B checklist items.

28

67.    The pilot of the Taquan Air N959PA was Lewis Beck. Mr. Beck was an employee and/or servant and/or agent and/or apparent agent and/or representative of Defendant TAQUAN AIR, and at all relevant times herein was acting within the scope of his employment and/or agency with Defendant TAQUAN AIR. Defendant TAQUAN AIR is vicariously liable for all of the acts and/or omissions of Mr. Beck related to the underlying accident. At all times during the subject flight Mr. Beck was piloting and navigating N959PA and was the pilot in command in charge of safely operating the subject scenic flight.

68.    On May 13, 2019, at approximately 12:21 Alaska Daylight Time, with PLAINTIFFS on board as passengers, the Taquan Otter Aircraft was travelling in the airspace above the George Inlet as the subject aircraft was returning to the Ketchikan Harbor Seaplane Base. Upon information and belief, the Defendant TAQUAN AIR's pilot, Mr. Beck, had not checked his ADS-B collision avoidance equipment since flying over Carroll Inlet to the east. Furthermore, Mr. Beck had not turned on certain avionics equipment, specifically, the Taquan Otter Aircraft's GSL71, and due to this failure, the aircraft's altitude and transponder identification were not transmitted "out" for identification and use by other aircraft using the ADS-B system.

69.    At said time and place, the Mountain Air Beaver Aircraft was also travelling in the airspace above the George Inlet for its flight returning to the Ketchikan Harbor Seaplane Base. Neither aircraft made position reports over the radio as was required.

70.    At said time and place, as the respective aircraft were each at an altitude of approximately 3,350 feet mean sea level ("msl"), the aircraft collided over George Inlet, a navigable waterway, causing the Taquan Otter Aircraft to essentially "free fall" into the icy waters of the George Inlet.  The Mountain Air Beaver Aircraft broke apart in mid-air due to the mid-air collision.

71.    The Taquan Otter Aircraft crashed into the freezing cold waters of the George Inlet.  Seriously injured, PLAINTIFFS were forced to escape the sinking aircraft, reach the surface and swim in icy water prior to being rescued.

72.     After the collision, N959PA rapidly descended more than 3000 feet, where it slammed into the water on the west side of George Inlet, and quickly sank. The pilot and passengers were able to get out of the wreckage before it was too late, with the exception of one passenger who was unable to escape, and she died in the sinking wreckage. The survivors, including PLAINTIFFS, were left in the cold deep waters of the George Inlet without life jackets or other flotation devices. After some time, one or more local fishing vessels arrived to help take PLAINTIFFS and other passengers to shore.  Prior to being rescued by a fishing vessel, the PLAINTIFF KEVIN ECKELKAMP was unable to move or swim as a result of his injuries and he said a prayer to himself because he was certain he was going to drown.  He then became submerged under the freezing water when his sister-in-law, also a passenger on the Taquan Otter Aircraft, grabbed him and pulled his head above water to prevent him from drowning.  She held onto him until being rescued by a fishing vessel.  But for the heroic acts of his sister-in-law PLAINTIFF KEVIN ECKELKAMP certainly would have drowned.  While shoreside, PLAINTIFF ELIZABETH ECKELKAMP was wet, freezing, and hypothermic, and waited for emergency rescue.  Unlike the other passengers, however, it was feared that PLAINTIFF KEVIN ECKELKAMP sustained a spinal cord injury as he was unable to move his legs.  As a result, PLAINTIFF KEVIN ECKELKAMP was left in the icy water for fear of exacerbating his injuries despite that he was freezing and begging to be taken out of the freezing water.  PLAINTIFF KEVIN ECKELKAMP remained in the water longer than any other passenger and was not removed from the icy water until after emergency medical personnel arrived on scene.

73.     As a result of the mid-air collision the PLAINTIFFS suffered severe, serious and permanent physical and emotional injuries as set forth below.

## FIRST CAUSE OF ACTION FOR
## NEGLIGENCE AGAINST DEFENDANT PCL

74.     PLAINTIFFS repeat, reiterate and re-allege all allegations contained in paragraphs 1 through 73 as though fully set forth at length herein.

75.     At all material times, Defendant PCL, as common carrier of the cruise and the subject Misty Fjord Tour, owed a duty to their paying passengers, including PLAINTIFFs, to provide, amongst other things, the utmost and highest duty of care for the health, welfare, and safety of their passengers for the Misty Fjord Tour, specifically including the flight portion of the tour, which was a commercial transportation undertaking. This duty included, amongst other things, the duty to warn.

76.     At all material times, Defendant PCL owed a duty to their passengers, including PLAINTIFFS, to exercise reasonable care for the health, welfare, and safety of their passengers, including for the Misty Fjord Tour, specifically including the flight portion of the tour, which was a commercial transportation undertaking.  This duty also included, amongst other things, the duty to warn.

77.     The mid-air collision, crash and injuries sustained by PLAINTIFFS, individually and/or collectively, were caused by Defendant PCL's negligence, recklessness and/or carelessness in one or more of the following ways:

a.     the subject flight was operated by Defendant TAQUAN AIR, who at all times was Defendant PCL's agent, joint venturer and/or representative with respect to the Misty Fjords Tour and thus, Defendant PCL is vicariously, directly and/or otherwise liable for the actions and/or omissions of Defendant TAQUAN AIR in causing the mid-air collision, as set forth herein, including, but not limited to, Defendant TAQUAN AIR's failure to properly operate the subject flight as well as its violations of Federal Aviation Regulations, including failure to see and avoid; failure to properly use available collision avoidance equipment; failure to report position over the common traffic advisory frequency as was required; failure to follow appropriate flight procedures; failure to yield the right of way; failure to maintain aircraft spacing and separation; and/or operating the aircraft in a careless and/or reckless manner; all for which Defendant PCL is liable;

///

b.      pursuant to applicable Federal Aviation Regulations and/or applicable law, Defendant PCL was the operator of the subject flight and as such, is responsible for any act and/or omission that occurred during the flight as detailed herein, including, the mid-air collision and the injuries sustained by the PLAINTIFFS;

c.      Defendant PCL improperly failed to examine Defendant TAQUAN AIR's background, prior operating history and/or safety record, especially in light of said defendant's prior crashes and significant deficient safety record as outlined herein and as reported to Defendant PCL, and inappropriately selected and/or retained Defendant TAQUAN AIR to conduct the flight portion of the Misty Fjords Tour;

d.      Defendant PCL knew, or should have known, that Defendant TAQUAN AIR was unfit and incapable of safely conducting the flight portion of the subject tour, especially in light of the prior history of deadly crashes and/or the significant deficient safety record of Defendant TAQUAN AIR;

e.      Defendant PCL failed to conduct proper and appropriate safety checks, safety reviews, check rides and/or audits of Defendant TAQUAN AIR, and had it done so, Defendant TAQUAN AIR would not have been selected and/or retained by Defendant PCL to conduct the flight portion of the Misty Fjords Tour;

f.      Defendant PCL failed to properly and/or adequately conduct a risk management analysis with respect to Defendant TAQUAN AIR, and had it done so, Defendant TAQUAN AIR would not have been selected and/or retained by Defendant PCL to conduct the flight portion of the Misty Fjords Tour;

g.      Defendant PCL failed to provide its cruise ship passengers, specifically including PLAINTIFFS with the appropriate level of safety and warnings with respect to the Misty Fjords Tour, including, but not limited to, that it sold tickets on an air carrier that had a significantly deficient safety record and fatal accident history;

///

///

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

h.    Defendant PCL marketed, advertised, sold and profited from the Misty Fjords Tour yet failed to provide its cruise ship passengers, specifically including PLAINTIFFS with the appropriate level of safety with respect to the subject tour;

i.    Defendant PCL improperly selected and/or contracted with Defendant TAQUAN AIR to conduct the flight portion of the Misty Fjords Tour, especially in light of Defendant TAQUAN AIR's prior operating history and/or significant deficient safety record;

j.    PLAINTIFFS specifically relied upon Defendant PCL's representations that the Misty Fjords Tour was safe when in fact it was not;

k.    Defendant PCL inappropriately promoted, advertised and sold the Misty Fjords Tour to its' cruise ship passengers, specifically including PLAINTIFFS, when it knew, or should have known, that the flight portion of the Misty Fjords Tour was not safe, especially in light of Defendant TAQUAN AIR's prior operating history and/or significant deficient safety record;

l.    Defendant PCL's promotional materials and/or advertising with respect to the Misty Fjords Tour was misleading and inappropriate, especially since those materials claimed that Defendant PCL would provide the "highest quality excursion", despite that it knew, or should have known, that Defendant TAQUAN AIR was incapable of providing passengers with the highest level of safety as required by applicable Federal Aviation Regulations based upon, amongst other things, Defendant TAQUAN AIR's prior operating history and/or significant deficient safety record, and PLAINTIFFS specifically relied upon these representations made by Defendant PCL;

m.    Defendant PCL inappropriately entered into, and/or renewed, the Tour Operating Contract with Defendant TAQUAN AIR when it knew, or should have known, based on Defendant TAQUAN AIR's prior operating history and/or significant deficient safety record that Defendant TAQUAN AIR was incapable of

providing passengers with the highest level of safety as required by applicable Federal Aviation Regulations;

n.     Defendant PCL failed to properly examine Defendant TAQUAN AIR's operating history, and had it done so, defendant TAQUAN AIR would not have been selected and/or retained by defendant PCL to conduct the flight portion of the Misty Fjords Tour based upon its prior operating history and/or its significant deficient safety record;

o.     Defendant PCL failed to conduct any pre-flight coordination with Defendant TAQUAN AIR, and had it done so the mid-air collision would not have occurred, especially due to the route flown by the pilot of the Taquan Otter Aircraft leading to the mid-air collision;

p.     Defendant PCL failed to disclose to PLAINTIFFS at any time prior to the Misty Fjords Tour that the flight portion was to be operated by Defendant TAQUAN AIR thereby preventing PLAINTIFFS from conducting their own investigation into Defendant TAQUAN AIR, and had this information been disclosed, as was required, PLAINTIFFS would not have participated in the Misty Fjords Tour, especially in light of Defendant TAQUAN AIR's prior operating history and/or significant deficient safety record;

q.     Defendant PCL violated applicable Federal Aviation Regulations under Part 295 or otherwise, concerning the subject flight, including required disclosures as well as the chartering of same, and had this information been disclosed, as was required, PLAINTIFFS would not have participated in the Misty Fjords Tour, especially in light of defendant TAQUAN AIR's prior operating history and/or significant deficient safety record;

r.     Defendant PCL improperly selected and/or improperly chartered Defendant TAQUAN AIR to conduct the flight portion of the Misty Fjords Tour;

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

s.     Defendant PCL failed to provide its passengers with the highest level of safety, including, but not limited to, by failing to ensure that the aircraft it selected to conduct the Misty Fjords Tour was either equipped with specific technology (collision avoidance equipment) designed to, amongst other things, prevent mid-air collisions, and/or failing to ensure that if such equipment was available it was operational and the pilot conducting the tour paid special attention to such equipment, especially in light of the fact that Defendant PCL knew, or should have known, that the flight portion of the subject tour was operated in highly congested visual flight rules airspace;

t.     Defendant PCL improperly and/or inappropriately selected a flight tour operator that did not utilize the services of a dedicated tour guide and/or lookout which forced the pilot of the Taquan Otter Aircraft to simultaneously act as the pilot in command and tour guide thereby preventing him from focusing exclusively on his operational duties, especially since Defendant PCL knew, or should have known, that the flight portion of the tour was conducted in heavily congested visual flight rules airspace, and if Defendant PCL had required that a tour guide and/or lookout be used the mid-air collision would not have occurred;

u.     As a result of the information that Defendant PCL knew, or should have known, as detailed above, the Defendant PCL improperly retained the flight tour operator to conduct the flight portion of the Misty Fjords Tour; and

v.     Defendant PCL was otherwise negligent, reckless and/or careless, including, but not limited to, failing to provide for the safety of its passengers; all of which resulted, in whole or in part, in the mid-air collision that caused PLAINTIFFS' injuries.

78.     As a result of the mid-air collision the PLAINTIFFS suffered severe, serious and permanent physical and emotional injuries as set forth below.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## SECOND CAUSE OF ACTION FORNEGLIGENT

## MISREPRESENTATION AGAINST DEFENDANT PCL

79.     PLAINTIFFS repeat, reiterate and re-allege all allegations contained in paragraphs 1 through 78 as though fully set forth at length herein.

80.     At all times relevant herein, it was the duty of Defendant PCL to provide PLAINTIFFS with reasonable care under the circumstances.

81.     At all times relevant, and upon information and belief, Defendant PCL's promotional and informational materials, including written literature and/or its website-based information that was directed to the PLAINTIFFS, which PLAINTIFFS specifically relied upon, were created, drafted, and/or edited by Defendant PCL.

82.     Defendant PCL's promotional material, written literature, brochures and/or its website content contained misrepresentations of material facts, including, but not limited to:

a.     misrepresenting that the Misty Fjords Tour was safe when in actuality the tour was not safe and/or appropriate for Defendant PCL's passengers as alleged herein. Defendant PCL expressed and/or implied that the (undisclosed) operator of the flight portion of the tour had an excellent flight safety history when that was not the case. Defendant PCL represented that it would provide the highest quality sightseeing flight excursions, which includes the same highest quality standard of safety, which was not correct and was misleading;

b.     misrepresenting and creating the false impression that the Misty Fjords Tour was managed, conducted, operated, controlled, owned and/or co-owned by Defendant PCL;

c.     misrepresenting that the tours offered by Defendant PCL, including the Misty Fjords Tour, were operated by entities that Defendant PCL selected based upon their excellent reputation for safety and security for Defendant PCL's passengers;

d.      Defendant PCL misrepresented that the operator of the flight portion of the Misty Fjords Tour had an "excellent reputation for service and safety". To the contrary, Defendant TAQUAN AIR had been involved in at least 13 aircraft accidents since 1994, which included 5 accidents involving 17 fatalities. These accidents also caused 24 serious injuries. Most of the accidents occurred near Ketchikan during cruise-ship passenger scenic flight operations, and nearly all of the accidents involved pilot error and safety lapses at Defendant TAQUAN AIR, including a culture that permitted taking flight safety risks.  Despite this accident history, Defendant PCL informed the general public, and its own passengers of the following, which is taken from Defendant PCL's website:

> We selected only the most reputable companies available to provide your excursions. The companies providing your excursions are selected by Princess based on their excellent reputation for service and safety.
> https://www.princess.com/learn/faq_answer/pre_cruise/excursions.jsp

e.      misrepresenting and/or implying that the operator of the flight portion of the Misty Fjords Tour maintained adequate insurance to cover loss; and

f.      misrepresenting and/or implying that all excursion providers would be subject to personal jurisdiction in the courts of California by unilaterally inserting a forum selection clause requiring that litigation arising from PLAINTIFFS' injuries be commenced in this Court.

83.     The foregoing statements made and/or disseminated by Defendant PCL were known, or through the exercise of reasonable care should have been known, to be false and/or misleading, through and including the following:

a.      Defendant PCL's selection, approval and retention process of tour operators requires, amongst other things, that it conduct an evaluation of the specific operator including, but not limited to, its operating history, policies and procedures and safety record, which should have revealed, amongst other things, that the operator of the flight portion of the Misty Fjords Tour was not safe; had a significant deficient safety

record; did not equip its aircraft with technology (collision avoidance equipment) specifically designed to, amongst other things, prevent mid-air collisions; did not require that the available collision avoidance technology was operational prior to flight and/or failed to provide appropriate training regarding such equipment if available, notwithstanding that it knew, or should have known, that the flight portion of the tour was conducted in heavily congested visual flight rules airspace; that the operator did not provide the highest level of safety for Defendant PCL's passengers; and/or did not have sufficient liability insurance to cover potential losses incurred by the Defendant PCL's passengers, specifically including the injuries suffered by the PLAINTIFFS;

b.     Defendant PCL was aware, or should have been aware, of the prior operating history and/or significant deficient safety record of the operator of the flight portion of the Misty Fjords Tour, and failed to ensure, as its materials attested, that the operator was safe;

c.     Defendant PCL, through prior experience knew, or should have known, that its implication that tour operators would be subject to the personal jurisdiction of courts in California was misleading in that it knew that tour operators regularly challenge the personal jurisdiction of courts located in California; and

d.     By vetting and approving Defendant TAQUAN AIR, Defendant PCL expressly and/or implied to PLAINTIFFS that Defendant TAQUAN AIR was a safe operator.  Yet, by failing to disclose Defendant TAQUAN AIR as the operator of the subject flight to PLAINTIFFS at any time prior to flight, Defendant PCL prevented PLAINTIFFS from discovering through publicly available information, that Defendant TAQUAN AIR was in fact, a very unsafe operator with a significant accident history and/or given the information known, or that should have been known, to defendant PCL, these representations were false, incorrect and misleading.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

84.     At all times relevant, Defendant PCL's statements were made or disseminated with the intent or purpose, either directly or indirectly, of inducing its passengers, specifically including PLAINTIFFS, to rely upon the statements and purchase tickets for the Misty Fjords Tour from which Defendant PCL profited.

85.     At all times relevant herein, PLAINTIFFS justifiably, and specifically did, rely upon the representations made by Defendant PCL when they purchased tickets for the Misty Fjords Tour, and such reliance was expected and justified in that Defendant PCL made all arrangements with respect to the Misty Fjords Tour; Defendant PCL was paid for the Misty Fjords Tour; Defendant PCL marketed the Misty Fjords Tour using its logo on all promotional materials; Defendant PCL specifically encouraged its passengers to purchase tickets on the Misty Fjords Tour through it, to the exclusion of other tour operators; Defendant PCL never disclosed to PLAINTIFFS the name of the operator of the flight portion of the tour; and PLAINTIFFS' exclusive contacts with respect to the Misty Fjords Tour were by and through Defendant PCL.

86.     As a result, Defendant PCL had an obligation to accurately disclose all information concerning the Misty Fjords Tour, including, but not limited to, the entity that was to perform the flight portion of the Misty Fjords Tour, which Defendant PCL failed to do.

87.     As a result of the foregoing misrepresentations, upon which PLAINTIFFS specifically relied, PLAINTIFFS purchased from Defendant PCL tickets for the Misty Fjords Tour during which the mid-air collision took place.  Absent Defendant PCL's material misrepresentations, PLAINTIFFS would not have purchased tickets from Defendant PCL for the Misty Fjords Tour, and as such, Defendant PCL is liable for PLAINTIFFS' injuries and damages.

88.     As a result of the mid-air collision the PLAINTIFFS suffered severe, serious and permanent physical and emotional injuries as set forth below.

///

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## THIRD CAUSE OF ACTION FOR NEGLIGENT SELECTION
## AND/OR RETENTION AGAINST DEFENDANT PCL

89.     PLAINTIFFS repeat, reiterate and re-allege all allegations contained in paragraphs 1 through 88 as though fully set forth at length herein.

90.     At all material times, Defendant PCL, as a common carrier, and/or as acting on behalf of a common carrier, owed a duty to their fare paying passengers, including PLAINTIFFS, to provide the utmost and highest duty of care for the health, welfare, and safety of their passengers, for the subject scenic flight excursion.

91.     At all times relevant, it was the duty of Defendant PCL to provide PLAINTIFFS with reasonable care under the circumstances.

92.     At all times relevant, Defendant PCL had a duty and obligation to select, hire, and/or retain a competent, safe and fit operator to provide the flight portion of the Misty Fjords Tour, and as such, Defendant PCL was required to diligently inquire, and continue to inquire, into the operator's operating history, safety record, and all aspects of flight operations, specifically with respect to the subject model aircraft that it selected for the flight portion of the Misty Fjords Tour.

93.     Defendant PCL breached the duty of care owed to the PLAINTIFFS by selecting, hiring and/or retaining an incompetent, inappropriate, unsafe and/or unfit operator for the flight portion of the Misty Fjords Tour based on, including, but not limited to, the following:

a.     the failure of Defendant PCL to properly and/or appropriately ensure that the flight operator could provide the highest level of safety to Defendant PCL's passengers who participated in the Misty Fjords Tour, given the flight operator's prior operating history and/or significant deficient safety record;

b.     the failure of Defendant PCL to select a flight operator that provided reasonable and appropriate training of the pilot who piloted the Taquan Otter Aircraft at the time of the mid-air collision;

c.      the failure of Defendant PCL to select a flight operator who implemented all appropriate policies and procedures to avoid a mid-air collision;

d.      the failure of Defendant PCL to properly and/or appropriately examine the flight operator's safety record and prior operating history;

e.      the failure of Defendant PCL to select a flight operator who would and could provide a safe flight;

f.      the failure of the Defendant PCL to continually oversee and monitor the operator who provided the flight portion of the Misty Fjords Tour to ensure that it was providing the highest level of safety to Defendant PCL's passengers, specifically including the PLAINTIFFS;

g.      the failure of the Defendant PCL in selecting a flight tour operator that did not utilize the services of a dedicated tour guide and/or lookout which forced the pilot of the Taquan Otter Aircraft to simultaneously act as the pilot in command and tour guide thereby preventing him from focusing exclusively on his operational duties, especially since Defendant PCL knew, or should have known, that the flight portion of the tour was conducted in heavily congested visual flight rules airspace; and

h.      the failure of the Defendant PCL to ensure and/or require that the aircraft utilized for the flight portion of the Misty Fjords Tour was equipped with technology (collision avoidance equipment) which was specifically designed to, amongst other things, prevent mid-air collisions, and/or ensure that if such equipment was available, it was operational and the pilot conducting the tour paid special attention to such equipment, especially since Defendant PCL knew, or should have known, that the flight portion of the Misty Fjords Tour was conducted in heavily congested visual flight rules airspace.

94.      Defendant TAQUAN AIR should not have been hired, retained, and or used by Defendant PCL to operate the subject flight. Had Defendant PCL not used Defendant TAQUAN AIR to operate the subject flight, the accident would not have occurred.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

95.     As a result of the mid-air collision the PLAINTIFFS suffered severe, serious and permanent physical and emotional injuries as set forth below.

**FOURTH CAUSE OF ACTION FOR NEGLIGENT**

**FAILURE TO WARN/DISCLOSE AGAINST DEFENDANT PCL**

96.     PLAINTIFFS repeat, reiterate and re-allege all allegations contained in paragraphs 1 through 95 as though fully set forth at length herein.

97.     At all material times, Defendant PCL, as a common carrier, owed a duty to their fare paying passengers, including PLAINTIFFS, to provide the utmost and highest duty of care for the health, welfare, and safety of their passengers for the subject scenic flight excursion.

98.     At all times relevant, it was the duty of defendant PCL to provide PLAINTIFFS with reasonable care under the circumstances.

99.     At all times relevant, Defendant PCL was the "charterer" of the subject aircraft that it used for the flight portion of the Misty Fjords Tour, and/or acted as an "air charter broker" and/or an "indirect air carrier" as these terms are defined under the Federal Aviation Regulations.

100.    As a result, Defendant PCL was required to disclose, warn and/or advise the PLAINTIFFS of certain information regarding the operator of the flight portion of the Misty Fjords Tour, pursuant to the Federal Aviation Regulations and/or otherwise.

101.    Defendant PCL failed to disclose certain information which it was required to disclose, and/or should have disclosed, including, but not limited to the following:

a.     Defendant PCL failed to disclose the name of the operator of the flight portion of the Misty Fjords Tour as was required by applicable Federal Aviation Regulations and/or otherwise, thereby depriving PLAINTIFFS the opportunity to conduct an examination into said operator, and/or deprived PLAINTIFFS from making an informed decision as to whether they would choose to put their lives in the hands of the operator chosen by Defendant PCL;

b.      Defendant PCL failed to disclose to PLAINTIFFS that the Taquan Otter Aircraft that it selected for the flight portion of the Misty Fjords Tour was not equipped with, and/or properly using, technology (collision avoidance equipment) which was specifically designed to, amongst other things, prevent mid-air collisions, and/or ensure that if such equipment was available it was operational and the pilot conducting the tour paid special attention to such equipment, and said information should have been disclosed especially since Defendant PCL knew, or should have known, that the flight portion of the Misty Fjords Tour was conducted in heavily congested visual flight rules airspace thereby depriving PLAINTIFFS the opportunity to make an informed decision as to whether they would choose to put their lives in the hands of the operator chosen by Defendant PCL;

c.      Defendant PCL failed to disclose that the operator of the flight portion of the Misty Fjords Tour had a significant deficient safety record, and such information should have been disclosed especially since Defendant PCL knew, or should have known, that the flight portion of the Misty Fjords Tour was conducted in heavily congested visual flight rules airspace thereby depriving PLAINTIFFS the opportunity to make an informed decision as to whether they would choose to put their lives in the hands of the operator chosen by Defendant PCL;

d.      Defendant PCL failed to warn PLAINTIFFS of the incompetence and unfitness of Defendant TAQUAN AIR, and the increased risk of danger and accidents in flying with Defendant TAQUAN AIR. Defendant PCL failed to warn PLAINTIFFS of the significant aircraft accident history of Defendant TAQUAN AIR, which had a culture of taking unreasonable flight risks on scenic flights for financial incentive. Had Defendant PCL fully disclosed these facts to PLAINTIFFS, and properly warned PLAINTIFFS of the dangers and risks in flying with Defendant TAQUAN AIR, PLAINTIFFS' would not have purchased the subject excursion or taken the accident flight;

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

e.     Defendant PCL failed to disclose to PLAINTIFFS that Defendant TAQUAN AIR had only recently begun to operate the subject model DHC-3 Otter aircraft, and such information should have been disclosed especially since Defendant PCL knew, or should have known, that the flight portion of the Misty Fjords Tour was conducted in heavily congested visual flight rules airspace thereby depriving PLAINTIFFS the opportunity to make an informed decision as to whether they would choose to put their lives in the hands of Defendant TAQUAN AIR, who had recently purchased and merged Promech into Defendant TAQUAN AIR, including Promech's aircraft, flight operations, and pilots, all of which had a history and culture of unsafe practices; and

f.     Defendant PCL failed to disclose other information which should have been disclosed thereby denying PLAINTIFFS the opportunity to make an informed decision as to whether they would choose to put their lives in the hands of the operator chosen by Defendant PCL.

102.    Had Defendant PCL disclosed information that was required to have been disclosed, and/or information that should have been disclosed, and/or provided appropriate warnings, all as set forth herein, PLAINTIFFS, upon being made aware of such information, would not have purchased tickets for the Misty Fjords Tour from the Defendant PCL, and thus, would not have been injured in the mid-air collision.  As such, Defendant PCL's failure to disclose such information and/or provide appropriate warnings renders Defendant PCL liable to PLAINTIFFS for their injuries as alleged herein.

103.    As a result of the mid-air collision the PLAINTIFFS suffered severe, serious and permanent physical and emotional injuries as set forth below.

## FIFTH CAUSE OF ACTION FOR VICARIOUS LIABILITY-ACTUAL AGENCY AGAINST DEFENDANT PCL

104.    PLAINTIFFS repeat, reiterate and re-allege all allegations contained in paragraphs 1 through 103 as though fully set forth at length herein.

105.    At all times relevant, it was the duty of Defendant PCL to provide PLAINTIFFS with reasonable care under the circumstances.

106.    At all times relevant, Defendant TAQUAN AIR acted on behalf of Defendant PCL with respect to the flight portion of the Misty Fjords Tour sold by Defendant PCL.

107.    Upon information and belief, Defendant PCL entered into the Tour Operating Contract with Defendant TAQUAN AIR, whereby Defendant PCL, amongst other things, acted as said defendant's principal performing all billing, advertising, promotion, ticket sales, coordination, etc., with respect to the Misty Fjords Tour, and provided Defendant TAQUAN AIR with all passengers, including PLAINTIFFS, as well as compensation for flight services rendered to Defendant PCL's passengers, including PLAINTIFFS, for the flight portion of the Misty Fjords Tour.

108.    In addition, as detailed herein, evidence of the actual agency between the Defendants PCL and TAQUAN AIR includes, but is not limited to: Defendant PCL marketed, promoted, advertised and sold the Misty Fjords Tour on behalf of Defendant TAQUAN AIR; Defendant PCL answered all questions and provided all information concerning the tour; all of Defendant PCL's promotional materials identified the tour as a "PCL tour" and prominently featured and displayed PCL's logo; PLAINTIFFS' sole and exclusive contact with respect to the Misty Fjords Tour was with the Defendant PCL; PLAINTIFFS were solicited by Defendant PCL to only purchase tours through it; PLAINTIFFS paid Defendant PCL for the tour; PLAINTIFFS received a receipt for their purchase from Defendant PCL; PLAINTIFFS were never advised of the name of the operator of the flight portion of the tour; PLAINTIFFS were directed from the Royal Princess to the boat portion of the tour by Defendant PCL's agents, servants, employees and/or representatives; and PLAINTIFFS were at all times led to believe that Defendant PCL managed, operated, controlled, owned and/or co-owned the Misty Fjords Tour.

109.    Based upon the foregoing, Defendant TAQUAN AIR is the actual agent of Defendant PCL and as such, Defendant PCL is liable, vicariously, directly or otherwise for the actions and/or omissions of Defendant TAQUAN AIR as detailed herein.

110.    The mid-air collision, crash and PLAINTIFFS' injuries were caused, in whole or in part, by the negligence, recklessness, and/or carelessness of Defendant TAQUAN AIR for which Defendant PCL is responsible as alleged herein.

111.    As a result of the mid-air collision the PLAINTIFFS suffered severe, serious and permanent physical and emotional injuries as set forth below.

## SIXTH CAUSE OF ACTION FOR APPARENT AGENCY OR
## AGENCY BY ESTOPPEL AGAINST DEFENDANT PCL

112.    PLAINTIFFS repeat, reiterate and re-allege all allegations contained in paragraphs 1 through 111 as though fully set forth at length herein.

113.    At all times relevant, it was the duty of Defendant PCL to provide PLAINTIFFS with reasonable care under the circumstances.

114.    At all times relevant, Defendant TAQUAN AIR was the apparent agent of the Defendant PCL with respect to the flight portion of the tour sold by Defendant PCL.

115.    At all times relevant, Defendant PCL is estopped to deny that Defendant TAQUAN AIR was its agent and/or apparent agent with respect to the flight portion of the tour sold by Defendant PCL.

116.    As detailed herein, Defendant PCL made various representations which caused PLAINTIFFS to reasonably and justifiably believe that the operator of the flight portion of the Misty Fjords Tour was Defendant PCL's agent including, but not limited to, Defendant PCL marketed, promoted, advertised and sold the Misty Fjords Tour on behalf of the Defendant TAQUAN AIR; Defendant PCL answered all questions and provided all information concerning the tour; all of Defendant PCL's promotional materials identified the tour as a "PCL tour" and prominently featured and displayed PCL's logo; PLAINTIFFS' only contact with respect to the Misty Fjords Tour was with Defendant PCL; PLAINTIFFS

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    were solicited by Defendant PCL to only purchase tours through it; PLAINTIFFS paid

2    Defendant PCL for the tour; PLAINTIFFS received a receipt for their purchase from

3    Defendant PCL; PLAINTIFFS were never advised the name of the operator of the flight

4    portion of the tour; PLAINTIFFS were directed from the Royal Princess to the boat portion

5    of the tour by Defendant PCL's agents, servants, employees and/or representatives; and

6    PLAINTIFFS were at all times led to believe that Defendant PCL managed, operated,

7    controlled, owned and/or co-owned the Misty Fjords Tour.

8         117.   As a result, PLAINTIFFS reasonably and justifiably relied on the

9    foregoing, to their detriment, and reasonably and justifiably believed that the operator of the

10   flight portion of the Misty Fjords Tour was the representative and/or agent of Defendant

11   PCL.

12        118.   PLAINTIFFS' reasonable and justifiable reliance was detrimental to them

13   because without such belief that the operator of the flight portion of the tour was the agent

14   and/or representative of the Defendant PCL, PLAINTIFFS would not have purchased,

15   booked or participated in the Misty Fjords Tour that was sold by the Defendant PCL, and

16   thus, would not have incurred their injuries as a result of the mid-air collision.

17        119.   The mid-air collision, crash and PLAINTIFFS' injuries were caused, in

18   whole or in part, by the negligence, recklessness, and/or carelessness of Defendant

19   TAQUAN AIR, for which Defendant PCL is responsible as alleged herein.

20        120.   As a result of the mid-air collision the PLAINTIFFS suffered severe,

21   serious and permanent physical and emotional injuries as set forth below.

**SEVENTH CAUSE OF ACTION AGAINST DEFENDANT PCL**

**BASED ON JOINT VENTURE WITH DEFENDANT TAQUAN AIR**

24        121.   PLAINTIFFS repeat, reiterate and re-allege all allegations contained in

25   paragraphs 1 through 120 as though fully set forth at length herein.

26

27

28

122.  At all times relevant, Defendant PCL engaged in a joint venture and/or common enterprise with Defendant TAQUAN AIR to market, promote, sell and/or operate the Misty Fjords Tour.

123.  As for its part with respect to the joint venture, amongst other things, Defendant PCL arranged, marketed, recommended, promoted, advertised, sold, and/or collected payment for the tour, which monies, then, upon information and belief, was shared between Defendants PCL and TAQUAN AIR.

124.  At all times relevant, Defendants PCL and TAQUAN AIR shared a common purpose, namely, to operate the Misty Fjords Tour for a profit.

125.  At all times relevant, Defendants PCL and TAQUAN AIR had joint proprietary and/or pecuniary interests in the Misty Fjords Tour.  Defendant PCL's interest included sponsoring, recommending, advertising, marketing, and selling the Misty Fjords Tour, and Defendant TAQUAN AIR's interest included the time and labor in conducting the flight portion of the tour.

126.  In addition, upon information and belief, Defendants PCL and TAQUAN AIR shared in profits as well as losses generated from the marketing, sale and operation of the Misty Fjords Tour.

127.  As a result of engaging in a joint venture and/or common enterprise, these defendants are jointly and severally liable for each other's negligence, recklessness, and/or carelessness as partners and/or collective participants in the joint venture and/or common enterprise.

128.  At all times relevant, Defendants PCL and TAQUAN AIR had an intention to create a joint venture and/or common enterprise for profit; each had a proprietary and/or pecuniary interest in the subject matter of the joint venture and/or common enterprise; and had a right to share in the profits earned, and losses incurred, from the joint venture and/or common enterprise, namely, the Misty Fjords Tour.

129.    As a result of being a participant in a joint venture and/or common enterprise, Defendant PCL is responsible and liable for the negligence, recklessness, and/or carelessness of the Defendant TAQUAN AIR.

130.    The mid-air collision, crash and PLAINTIFFS' injuries were caused, in whole or in part, by the negligence, recklessness, and/or carelessness of Defendant TAQUAN AIR, for which the Defendant PCL is responsible as alleged herein.

131.    As a result of the mid-air collision the PLAINTIFFS suffered severe, serious and permanent physical and emotional injuries as set forth below.

**EIGHTH CAUSE OF ACTION AGAINST DEFENDANT PCL**

**BASED UPON BREACH OF CONTRACT AND THIRD-PARTY**

**BENEFICIARY**

132.    PLAINTIFFS repeat, reiterate and re-allege all allegations contained in paragraphs 1 through 133 as though fully set forth at length herein.

133.    Upon information and belief, Defendants PCL and TAQUAN AIR entered into the Tour Operating Contract to provide the flight portion of the Misty Fjords Tour, for the benefit of each other, as well as for the benefit of Defendant PCL's passengers, specifically including the PLAINTIFFS.

134.    The intent of the Tour Operating Contract to benefit Defendant PCL's passengers, specifically including the PLAINTIFFS, was expressed by the provisions of the contract.  Upon information and belief, the contractual provisions evidenced that the purpose of the contract was for Defendant TAQUAN AIR to provide flight services for the Misty Fjords Tour to Defendant PCL's passengers; allowed the Defendant PCL to charge its cruise passengers, including the PLAINTIFFS, the price that it deemed appropriate for the tour; Defendant PCL compensated Defendant TAQUAN AIR for flight services rendered to Defendant PCL's passengers, including PLAINTIFFS; Defendant PCL had the sole discretion to issue refunds; Defendant PCL required that Defendant TAQUAN AIR use the highest standard of care for the passengers' safety; and/or Defendant PCL required that

1   Defendant TAQUAN AIR maintain certain liability coverage for the benefit of passengers,

2   specifically including the PLAINTIFFS.

3        135.    As demonstrated herein, Defendant PCL breached said contract, to the

4   detriment of the PLAINTIFFS by, amongst other things, representing and promoting that the

5   Misty Fjords Tour was safe when in fact it was not; by Defendant PCL's representations that

6   the safety of its passengers were paramount despite the fact that it selected an operator to

7   conduct the flight portion of the Misty Fjords Tour who had a deficient safety record, and

8   whose aircraft was not equipped with specific technology (collision avoidance equipment)

9   designed to, amongst other things, prevent mid-air collisions, and/or failed to ensure that if

10   such equipment was available it was operational and the pilot conducting the tour paid

11   special attention to such equipment notwithstanding that Defendant PCL knew, or should

12   have known, that the flight portion of the Misty Fjords Tour was conducted in highly

13   congested visual flight rules airspace; failed to provide a safe tour; failed to adequately ensure

14   the safety of PLAINTIFFS; failed to adequately disclose, warn or advise PLAINTIFFS of

15   the operator who was to conduct the flight portion of the tour; failed to adequately select

16   and/or retain the tour operator notwithstanding that the subject tour was promoted,

17   advertised, and sold as having been selected by Defendant PCL as being a safe and unique

18   experience; failed to adequately and/or appropriately promote the highest safety standards in

19   the industry; failed to properly vet, select, audit and/or retain the tour operator; failed to warn

20   that the tour operator may contest the jurisdiction of the courts of this state, notwithstanding

21   that Defendant PCL requires PLAINTIFFS to file suit in this court for injuries sustained

22   during the tour; failed to disclose that the tour operator maintains far less insurance coverage

23   than the Defendant PCL; failed to review the tour operator's safety record and/or prior

24   operating history; and otherwise breached the contract which was intended to benefit

25   PLAINTIFFS, all to their detriment and damages.

26        136.    The aforementioned contract was specifically intended to benefit the

27   PLAINTIFFS, and the mid-air collision, crash and PLAINTIFFS' injuries were caused, in

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  whole or in part, by the aforementioned contractual breaches by Defendant PCL and as a

2  result, Defendant PCL is liable to PLAINTIFFS for their damages as set forth below.

3      137.    As a result of the mid-air collision the PLAINTIFFS suffered severe,

4  serious and permanent physical and emotional injuries as set forth below.

5                          **NINTH CAUSE OF ACTION FOR**

6              **NEGLIGENCE AGAINST DEFENDANT TAQUAN AIR**

7      138.    PLAINTIFFS repeat, reiterate and re-allege all allegations contained in

8  paragraphs 1 through 137 as though fully set forth at length herein.

9      139.    At all material times, Defendant TAQUAN AIR, as a common carrier,

10  owed a duty to their paying passengers, including PLAINTIFFS, to provide the utmost and

11  highest duty of care for the health, welfare, and safety of their passengers, for the subject

12  scenic flight excursion.

13      140.    At all times relevant, it was the duty of Defendant TAQUAN AIR to

14  provide PLAINTIFFS with reasonable care under the circumstances.

15      141.    At all times relevant the pilot of the Taquan Otter Aircraft (Mr. Lewis

16  Beck) was an agent, servant, employee and/or representative of Defendant TAQUAN AIR

17  and was acting within the course and scope of his employment at the time of the mid-air

18  collision which is the subject of this litigation and as such, Defendant TAQUAN AIR is

19  liable for all actions and/or omissions of its pilot, in causing and/or contributing to the

20  accident.

21      142.    The mid-air collision, crash and injuries sustained by the PLAINTIFFS,

22  individually and/or collectively, were caused by Defendant TAQUAN AIR's negligence,

23  recklessness and/or carelessness in one or more of the following ways:

24          a.    in that the pilot failed to see and avoid the Mountain Air Beaver Aircraft;

25          b.    in that the pilot failed to keep a proper lookout and/or observe other

26      aircraft in and around the airspace above the George Inlet, including, the Mountain

27      Air Beaver Aircraft;

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

c.      in that the pilot failed to avoid and improperly collided mid-air with the Mountain Air Beaver Aircraft;

d.      in that the pilot failed to properly and appropriately operate the Taquan Otter Aircraft in the applicable airspace and pursuant to proper procedures;

e.      in that the pilot violated Federal Aviation Regulations, including but not limited to failure to comply with aircraft right-of-way (14 CFR 91.113), failure to see and avoid (14 CFR 91.113(b)), failure to maintain aircraft spacing (14 CFR 91.111), and operating in a careless and/or reckless manner (14 CFR 91.13) which proximately caused the mid-air collision;

f.      in that the pilot failed to properly operate and control the Taquan Otter Aircraft;

g.      in that the pilot failed to take steps necessary to avoid the mid-air collision;

h.      in that the pilot failed to utilize and/or abide by the air traffic avoidance equipment installed on the Taquan Otter Aircraft, including ADS-B equipment;

i.      in that the pilot failed to monitor aircraft communications to ascertain any potential conflicting traffic;

j.      in that the pilot flew a non-standard route of flight which proximately caused the mid-air collision;

k.      in that Defendant TAQUAN AIR, by and through its policies and procedures, fostered a working and operating environment which resulted in profits over safety, including, but not limited to, the requirement that the pilot of the Taquan Otter Aircraft simultaneously act as the pilot-in-command and as a tour guide notwithstanding that Defendant TAQUAN AIR knew, or should have known, that the flight was conducted in extremely congested airspace, and requiring the pilot to act in this dual capacity distracted him from performing his operational duties as a pilot, and resulted, in whole or in part, in the mid-air collision;

l.       in that Defendant TAQUAN AIR failed to provide a dedicated tour guide to conduct the tour which would have allowed the pilot of the Taquan Otter Aircraft to focus exclusively on his operational duties especially in a heavily congested visual flight rules operating environment which would have prevented the mid-air collision;

m.       in that Defendant TAQUAN AIR failed to provide a dedicated lookout on board the Taquan Otter Aircraft to assist its pilot especially since it knew, or should have known, that the Taquan Otter Aircraft operated in a heavily congested visual flight rules environment and had such a lookout been required and present, the mid-air collision would not have occurred;

n.       in that Defendant TAQUAN AIR failed to implement appropriate policies and procedures that would have prevented the mid-air collision, including, but not limited to, appropriate training;

o.       in that Defendant TAQUAN AIR failed to implement appropriate safety recommendations in order to prevent mid-air collisions by its sight-seeing aircraft, including, but not limited to, equipping its aircraft with the most-updated technology (collision avoidance equipment), which is designed, in part, to specifically prevent mid-air collisions, and/or requiring that said equipment is operational prior to flight, and specific training mandating that the pilot adhere to such equipment, if available;

p.       in that Defendant TAQUAN AIR failed to provide its passengers with the highest level of safety, including, but not limited to, by failing to conduct a safe flight all as alleged herein; failing to equip its aircraft with the most-updated technology (collision avoidance equipment), which was designed, in part, to specifically prevent mid-air collisions, and/or failed to require that said equipment was operational prior to flight and stress to its pilots the importance of adhering to such equipment if available; all of which is especially egregious since Defendant TAQUAN AIR knew, or should have known, that the Taquan Otter Aircraft operated in highly congested visual flight rules airspace;

q.      in that Defendant TAQUAN AIR allowed its pilot to fly a non-standard route of flight which increased the likelihood of a mid-air collision, notwithstanding that defendant TAQUAN AIR knew, or should have known, that the Taquan Otter Aircraft operated in a heavily congested visual flight rules environment and such a flight pattern could and did lead to the mid-air collision;

r.      in that Defendant TAQUAN AIR failed to properly train its pilots with effective see and avoid techniques and procedures, especially since it knew, and/or should have known, that its aircraft operated in a heavily congested visual flight rules environment;

s.      in that Defendant TAQUAN AIR failed to implement appropriate policies, procedures and/or guidelines to eliminate the possibility of a collision with other aircraft despite the fact that it knew, or should have known, that the possibility of a mid-air collision needed to be eliminated especially since the Taquan Otter Aircraft operated in a heavily congested visual flight rules environment;

t.      Defendant TAQUAN AIR, and/or its agents, servants, employees and/or representatives, were negligent by, amongst other things, utilizing an outdated un-certified aircraft checklist which was used by the prior owner/operator of the Turbine Otter Aircraft N959PA, namely Promech, which checklist, among other things, failed to incorporate specific checklist items for the traffic collision avoidance equipment (ADS-B), which was required to be used during the flight; and

u.      Defendant TAQUAN AIR, and/or its agents, servants, employees and/or representatives, were otherwise negligent, reckless and/or careless; all of which resulted, in whole or in part, in the mid-air collision that caused PLAINTIFFS' injuries.

143.    As a result of the mid-air collision the PLAINTIFFS suffered severe, serious and permanent physical and emotional injuries as set forth below.

///

1

**TENTH CAUSE OF ACTION FOR**

2

**NEGLIGENCE AGAINST DEFENDANT MOUNTAIN AIR**

3
144.    PLAINTIFFS repeat, reiterate and re-allege all allegations contained in

4
paragraphs 1 through 143 as though fully set forth at length herein.

5
145.    At all times relevant the pilot of the Mountain Air Beaver Aircraft (Mr.

6
Randy Sullivan) was an agent, servant, employee and/or representative of Defendant

7
MOUNTAIN AIR, and was acting within the course and scope of his employment at the

8
time of the mid-air collision which is the subject of this litigation and as such, Defendant

9
MOUNTAIN AIR is liable for all actions and/or omissions of its pilot.

10
146.    The mid-air collision, crash and injuries sustained by the PLAINTIFFS,

11
individually and/or collectively, were caused by Defendant MOUNTAIN AIR's negligence,

12
recklessness and/or carelessness in one or more of the following ways:

13
a.    in that the pilot failed to see and avoid the subject Taquan Otter Aircraft;

14
b.    in that the pilot failed to keep a proper lookout and/or observe other

15
aircraft in and around the airspace above the George Inlet, including, the Taquan Otter

16
Aircraft;

17
c.    in that the pilot improperly collided mid-air with the Taquan Otter

18
Aircraft;

19
d.    in that the pilot failed to properly and appropriately operate the Mountain

20
Air Beaver Aircraft in the applicable airspace;

21
e.    in that the pilot violated Federal Aviation Regulations, including but not

22
limited to, failure to comply with aircraft right-of-way (14 CFR 91.113), failure to

23
see and avoid (14 CFR 91.113(b)), failure to maintain aircraft spacing (14 CFR

24
91.111), failure to fly proper cruising altitude (14 CFR 91.159), and operating in a

25
careless and/or reckless manner (14 CFR 91.13), all of which proximately caused the

26
mid-air collision;

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

f.      in that the pilot failed to properly operate and control the Mountain Air Beaver Aircraft;

g.      in that the pilot failed to take steps necessary to avoid the mid-air collision;

h.      in that the pilot failed to utilize and/or abide by the air traffic avoidance equipment installed on the Mountain Air Beaver Aircraft;

i.      in that the pilot failed to monitor aircraft communications to ascertain any potential conflicting traffic, failed to fly proper procedures for the area, and failed to make proper position reporting;

j.      in that the pilot flew a non-standard route of flight which proximately caused the mid-air collision;

k.      in that Defendant MOUNTAIN AIR failed to provide a dedicated tour guide to conduct the tour which would have allowed the pilot of the Mountain Air Beaver Aircraft to focus exclusively on his operational duties especially in a heavily congested visual flight rules operating environment which would have prevented the mid-air collision;

l.      in that Defendant MOUNTAIN AIR failed to provide a dedicated lookout on board the Mountain Air Beaver Aircraft to assist its pilot especially since it knew, or should have known, that the Mountain Air Beaver Aircraft operated in a heavily congested visual flight rules environment and had such a lookout been required and present, the mid-air collision would not have occurred;

m.      in that Defendant MOUNTAIN AIR failed to implement appropriate policies and procedures that would have prevented the mid-air collision including, but not limited to, appropriate training;

n.      in that Defendant MOUNTAIN AIR failed to implement appropriate safety recommendations in order to prevent mid-air collisions by its aircraft conducting flight seeing aircraft rides, including, but not limited to, equipping its aircraft with the most-updated technology (collision avoidance equipment), which

was designed, in part, to specifically prevent mid-air collisions and/or requiring specific training mandating that the pilot adhere to such equipment, if available;

o.      in that Defendant MOUNTAIN AIR failed to provide the highest level of safety, including, but not limited to, by failing to equip its aircraft with the most-updated technology (collision avoidance equipment), which was designed, in part, to specifically prevent mid-air collisions, and/or failed to stress to its pilots the importance of adhering to such equipment if available, which is especially egregious since it knew, or should have known, that the Mountain Air Beaver Aircraft operated in highly congested visual flight rules airspace;

p.      in that Defendant MOUNTAIN AIR allowed its pilot to fly a non-standard route of flight which increased the likelihood of a mid-air collision, notwithstanding the fact that it knew, or should have known, that the Mountain Air Beaver Aircraft operated in a heavily congested visual flight rules environment and such a flight pattern could and did lead to the mid-air collision;

q.      in that Defendant MOUNTAIN AIR failed to properly train its pilots with effective see and avoid techniques and procedures, especially since it knew, and/or should have known, that its aircraft operated in a heavily congested visual flight rules environment;

r.      in that Defendant MOUNTAIN AIR failed to implement appropriate policies, procedures and/or guidelines to eliminate the possibility of a collision with other aircraft despite the fact that it knew, or should have known, that the possibility of a mid-air collision needed to be eliminated especially since the Mountain Air Beaver Aircraft operated in a heavily congested visual flight rules environment; and

s.      Defendant MOUNTAIN AIR, and/or its agents, servants, employees and/or representatives, were otherwise negligent, reckless and/or careless; all of which resulted, in whole or in part, in the mid-air collision that caused PLAINTIFFS' injuries.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

147.     As a result of the mid-air collision the PLAINTIFFS suffered severe, serious and permanent physical and emotional injuries as set forth below.

**DAMAGE ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION**

148.     PLAINTIFFS repeat, reiterate and re-allege all allegations contained in paragraphs 1 through 147 as though fully set forth at length herein.

149.     Defendants are each jointly and severally liable to Plaintiffs, based upon applicable law, including under general maritime law, and/or California law, and/or Alaska law.

150.     As a result of the foregoing and the mid-air collision the PLAINTIFFS suffered serious and permanent personal, physical, mental and emotional injuries, including, but not limited to, physical injuries as a result of the mid-air collision, free fall and crash into the freezing cold waters of the George Inlet below, consisting of multiple fractures, pain and suffering, other extensive physical injuries from being submerged in freezing cold water, mental anguish, post-traumatic stress disorder, emotional distress and fear of impending death as detailed further below.

151.     As a result of the mid-air collision, impact with the icy waters of the George Inlet and being submerged in the freezing cold water PLAINTIFF KEVIN ECKELKAMP needed to be airlifted to a hospital for inpatient admission. He suffered significant permanent physical and emotional injuries, including but not limited to: left orbital fracture, floor and medial wall; periauricular and forehead lacerations; left hip dislocation; left acetabular fracture; left femoral head fracture; deep vein thrombosis; left shoulder dislocation; rotator cuff tear; hypothermia; multiple surgeries and painful and continuing rehabilitation; concussion and post-concussion syndrome; vertigo; soft tissue injuries; arthritic changes; contusions and abrasions; severe physical pain and suffering; mental anguish; post-traumatic stress disorder; and loss of enjoyment of life; disability; scarring; disfigurement; inconvenience; loss of wages; incurred and continues to incur medical expenses; forced to undergo painful and continuing medical treatment and rehabilitation; fear of impending

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

death and doom for himself and his wife; loss of the care, companionship and consortium of his wife who was also injured; as well as other significant and permanent personal, physical, mental and economic injuries, all for which the defendants, and each of them, are jointly and severally responsible.

152.    As a result of the mid-air collision impact with the icy waters of the George Inlet and being submerged in the freezing cold water PLAINTIFF ELIZABETH ECKELKAMP needed to be airlifted to a hospital for inpatient admission.  She suffered significant and severe permanent physical and emotional injuries, including but not limited to, a four part fracture of the right humerus with significant displacement that required a reverse total shoulder replacement surgery with open reduction and internal fixation; multiple rib fractures; right orbital fracture; facial fracture; fractures of the spine at L-1 and L-3 transverse fractures; L-5 compression fracture; pulmonary contusion; nerve damage; radiculopathy causing numbness and weakness; hypothermia; concussion and post-concussion syndrome; disability; scarring; disfigurement; inconvenience; loss of wages; incurred and continues to incur medical expenses; forced to undergo painful and continuing medical treatment and rehabilitation; mental anguish; post-traumatic stress disorder; fear of impending death and doom for herself and her husband; loss of the care, companionship and consortium of her husband who was also injured; as well as other significant and permanent personal, physical, mental and economic injuries, all for which the defendants, and each of them, are jointly and severally responsible.

153.    Based upon the foregoing, PLAINTIFFS each claim all damages against the Defendants according to the proof at trial, including, but not limited to, compensatory, economic, non-economic and punitive damages, including in that the conduct by said Defendants, their officers, agents, servants, employees and/or representatives, were outrageous, grossly negligent, and said Defendants acted with a reckless, willful, and knowing disregard of the rights and safety of others, specifically including the PLAINTIFFS, and said Defendants placed profits over safety, such that said Defendants are liable for all

damages, including, punitive damages and attorneys' fees. Said damages, individually and/or collectively, are in excess of the jurisdictional limits of this Court.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS KEVIN ECKLEKAMP and ELIZABETH ECKELKAMP pray for judgment against Defendants, and each of them, as follows:

1. For general and special damages according to proof;
2. For economic and non-economic damages;
3. For Punitive Damages as allowed under applicable law;
4. For prejudgment interest to the extent allowed by law;
5. For costs of suit incurred herein and attorneys' fees; and
6. For such other and further relief as the Court may deem proper.

Date:    November 9, 2020.

NELSON & FRAENKEL LLP

By*: s/Carlos F. Llinás Negret*

Stuart R. Fraenkel
Gretchen M. Nelson
Carlos F. Llinas Negret

and

SPEISER KRAUSE, P.C.
Attorneys for Plaintiffs Kevin
Eckelkamp and Elizabeth Eckelkamp

## JURY TRIAL DEMAND/REQUEST

PLAINTIFFS hereby request and demand a trial by jury on all claims so triable.

Date:November 9, 2020

NELSON & FRAENKEL LLP

By: *s/Carlos F. Llinás Negret*
Stuart R. Fraenkel
Gretchen M. Nelson
Carlos F. Llinas Negret

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

and
SPEISER KRAUSE, P.C
Attorneys    for    Plaintiffs    Kevin
Eckelkamp and Elizabeth Eckelkamp

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL